# United States Court of Appeals
## For the First Circuit

No. 03-2723

UNITED STATES,

Appellee,

v.

JOSÉ M. FIGUEREO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor  M. Laffitte, U.S. District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Luis A. Guzmán-Dupont for appellant.
Nelson Pérez-Sosa, Assistant U.S. Attorney, with whom H.S. Garcia, U.S. Attorney,  and German Rieckehoff, Assistant U.S. Attorney, were on brief, for appellee.

April 19, 2005

**LIPEZ, Circuit Judge.** José Figuereo pled guilty to being found in the United States after having been deported, a violation of 8 U.S.C. § 1326 (2003). In calculating Figuereo's sentence of 57 months' imprisonment and three years of supervised release, the district court added two criminal history points pursuant to United States Sentencing Guideline ("U.S.S.G.") § 4A1.1(d) (2003) because Figuereo committed the instant offense -- being found in the United States -- while serving a state prison sentence. Figuereo appeals his sentence, arguing that the district court erred in applying § 4A1.1(d) and in treating the Guidelines as mandatory. He also challenges the drug testing and treatment condition of his supervised release, arguing that the court improperly delegated its authority to a probation officer. We remand for the limited purpose of adjusting the drug treatment and testing condition but affirm the rest of the sentence.

## I.

The facts in this case are undisputed. Figuereo, a Dominican national, was deported from the United States in 1992 following his conviction for various drug-related misdemeanors and felonies. He re-entered the country without permission in 1999.

In May 2002, Figuereo was arrested in Puerto Rico on drug charges. He was subsequently convicted in Puerto Rico Superior Court and sentenced to one year in prison. While Figuereo was serving his sentence, he participated in a routine interview with

the Alien Criminal Apprehension Program for the Department of Homeland Security. In that interview, Figuereo claimed to be David Figueroa-Figuereo, a legal permanent resident of the United States. Further investigation revealed Figuereo's true identity and the fact of his previous conviction and deportation.

On April 30, 2003, a federal grand jury indicted Figuereo on one count of entering the United States as an alien previously deported following a conviction for an aggravated felony, 8 U.S.C. § 1326(b)(2).[1] Figuereo pled guilty to this count on July 14, 2003. On November 10, 2003, the district court sentenced Figuereo

---

[1] 8 U.S.C. § 1326 provides that:

(a) In general
Subject to subsection (b) of this section, any alien who--

. . .

(2) enters, attempts to enter, or is at any time found in, the United States . . .

shall be fined under Title 18 [of the United States Code], or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--

. . .

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both . . . .

under the then mandatory Guidelines to 57 months in prison, the bottom of the applicable sentencing range, and three years of supervised release. That sentence reflects a two-point increase in Figuereo's criminal history under U.S.S.G. § 4A1.1(d), which mandates such an increase "if the defendant committed the instant offense while under any criminal justice sentence." The court also imposed numerous conditions of supervised release, one of which provided that:

> The defendant shall . . . submit to a drug test within fifteen (15) days of release . . . and at least two (2) tests thereafter when so requested by the U.S. Probation Officer. If any such samples detect substance abuse, the defendant shall, at the discretion of the U.S. Probation Officer, participate in a substance abuse treatment program, arranged and approved by the U.S. Probation Officer.

Figuereo filed a timely appeal, challenging his sentence and the condition of supervised release relating to drug testing and treatment.

## II.

### A. U.S.S.G. § 4A1.1(d) enhancement

Section 4A1.1(d) of the Sentencing Guidelines instructs a court calculating a defendant's criminal history level to "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including . . . imprisonment." Here, Figuereo's offense was being "found in[] the United States" in violation of 8 U.S.C. § 1326. Because he was serving a state prison sentence when the Department of Homeland Security "found"

him, the district court concluded that § 4A1.1(d) applied and added two criminal history points.  Figuereo now asserts for the first time on appeal that § 4A1.1(d) cannot apply without a mens rea component.[2]

We typically review the district court's factual findings for clear error and its interpretation and application of the sentencing guidelines de novo.  United States v. Savarese, 385 F.3d 15, 18 (1st Cir. 2004).  Where the defendant raises objections on appeal that were not presented to the district court, however, the standard is different.[3]  Under these circumstances, "our review is

---

[2]Figuereo also contends that the § 4A1.1(d) enhancement was improper in light of U.S.S.G. § 1B1.3(a) (2003), which limits relevant conduct (i.e., factors that determine the offense level) to acts that are willful and related to the instant offense.  He asserts that because the conduct that led to the § 4A1.1(d) enhancement -- being in prison when he was "found" in the United States -- was unrelated to the instant offense and not willful, it should not have affected the Guidelines calculation.

This reasoning rests on an erroneous reading of § 1B1.3(a).  By its own terms, § 1B1.3(a) defines relevant conduct only for purposes of Chapters 2 and 3 of the Guidelines.  The criminal history enhancement at issue here falls under Chapter 4 of the Guidelines, and is thus governed instead by § 1B1.3(b) (2003).  Section 1B1.3(b) specifically provides that factors affecting the guideline range under Chapter 4 are determined not by § 1B1.3(a), but rather "on the basis of the conduct and information specified in the respective guidelines."  Here, the relevant guideline, § 4A1.1(d), provides for a two-point increase if the defendant "committed the instant offense while under any criminal justice sentence," without reference to any mens rea requirement or whether the sentence was related to the instant offense.

[3]Figuereo did object at sentencing, but he did so solely on a basis not now before us -- namely, that the Guidelines calculation gave too much weight to his Puerto Rico conviction because it added points both under § 4A1.1(b), as a "prior sentence of imprisonment exceeding one year and one month," and under § 4A1.1(d).  He

restricted to plain error." United States v. Carrasco-Mateo, 389 F.3d 239, 243 (1st Cir. 2004). Plain error is a deferential standard under which errors will be corrected only if the defendant shows "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Emphasizing Supreme Court precedent disfavoring offenses that lack a mens rea requirement, see Staples v. United States, 511 U.S. 600, 606 (1994), Figuereo asserts that the court erred in applying the § 4A1.1(d) enhancement without regard to the voluntariness of his conduct. In other words, he contends that because he did not have the option of leaving the United States once he was imprisoned, his sentence for being "found" while in prison cannot be more severe than if he had been "found" before being imprisoned. We disagree.

Section 4A1.1(d) defines a sentencing enhancement, not an element of the offense. See Harris v. United States, 536 U.S. 545, 549 (2002) (distinguishing between elements of a crime and sentencing factors on the ground that the latter are "not subject to the Constitution's indictment, jury, and proof requirements").

_____

acknowledged that the court had calculated the sentence correctly but raised this "double-dipping" argument as a structural flaw in the Guidelines themselves.

Several of our sister circuits have concluded that Guidelines sentencing factors need not include a <u>mens</u> <u>rea</u> requirement. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Gonzalez</u>, 262 F.3d 867, 870 (9th Cir. 2001); <u>but</u> <u>see</u> <u>United States</u> v. <u>Schnell</u>, 982 F.2d 216, 220-21 (7th Cir. 1992) (rejecting a categorical rule that sentencing enhancements do not require a <u>mens</u> <u>rea</u> element, but concluding that the particular enhancement at issue did not violate due process despite absence of such an element). Moreover, at least two of our sister circuits have upheld § 4A1.1(d) enhancements for defendants who were "found" in the United States in violation of 8 U.S.C. § 1326 while they were imprisoned. <u>See</u> <u>United States</u> v. <u>Coeur</u>, 196 F.3d 1344, 1346 (11th Cir. 1999); <u>United States</u> v. <u>Santana-Castellano</u>, 74 F.3d 593, 598 (5th Cir. 1996).

The fact of being under a criminal justice sentence is a sentencing factor for violations of 8 U.S.C. § 1326, not an element of the crime of being "found" in the United States.[4] It was thus not plain error for the district court to follow our sister circuits in applying the § 4A1.1(d) enhancement to a defendant who was "found" in the United States while imprisoned.[5]

_____

[4]Figuereo's constitutional challenge on <u>mens</u> <u>rea</u> grounds is limited to the § 4A1.1(d) sentencing enhancement. He does not dispute the constitutionality of the statute under which he was convicted, and we do not reach that issue.

[5]Although it was not plain error for the court to apply the § 4A1.1(d) enhancement without regard to Figuereo's <u>mens</u> <u>rea</u>, we note that Figuereo did in fact have a culpable state of mind relating to his illegal entry when he was "found" in prison. He

## B. **Booker**

Figuereo also argues for the first time on appeal that he is entitled to resentencing in light of the Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 738, 764-75 (2005) (Breyer, J.), which rendered the Guidelines advisory rather than mandatory. To prevail on an unpreserved Booker claim, a defendant must show not only that he was sentenced under the mandatory Guidelines, but also that there are "circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime." United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005); see also United States v. Heldeman, ___ F.3d ___, No. 04-1915, 2005 WL 708397, at *3 (1st Cir. Mar. 29, 2005) (describing the Booker plain error inquiry as whether "there is reasonable indication that the district judge might well have reached a different result under advisory guidelines").

At sentencing, Figuereo asked the district court to "be considerate" to him, explaining that, "I came here on account of my children, because as you know, I have my children [in the United States], and I was just coming here to try to see them, and all the

---

attempted to conceal his identity and immigration status from federal officials, identifying himself to Department of Homeland Security officials as David Figueroa-Figuereo, a legal permanent resident of the United States.

crimes that I have committed have been the result of my drug abuse." Emphasizing that mandatory Guidelines precluded the sentencing court from taking such mitigating factors into account, see Antonakopolous, 399 F.3d at 81, Figuereo asserts that he should be resentenced under the advisory regime to allow the court to reconsider his request.

There is no indication, however, that the court would have imposed a more lenient sentence in light of Figuereo's request even if it had been free to do so, particularly given what it described as Figuereo's "extensive" criminal history.[6] The court did not comment on Figuereo's family ties or history of drug abuse despite Figuereo's invocation of these factors at sentencing and references to them in the pre-sentence report ("PSR"). Cf. Heldeman, 2005 WL 708397, at *3. Moreover, the PSR indicated that although Figuereo has four children in the United States, he does not have a relationship with any of them beyond providing child support for one daughter. Thus, the court might well have viewed

---

[6]The district court described Figuereo's "extensive criminal record" at the sentencing hearing, noting that it included possession of stolen property in the Bronx, New York. Criminal theft, also in New York. Possession with intent to distribute narcotics in New Jersey. Another case of possession of a weapon in the third degree in New York, and possession of a stolen motor vehicle in Providence, Rhode Island. Then, also, simple assault and battery in Rhode Island, and finally, violation of drugs in Puerto Rico, possession with intent to distribute.
The court then warned Figuereo that "[i]f you commit another offense after this sentence . . . then you will be considered a criminal career offender, which might entail a life sentence."

his claim to have returned to the United States "on account of my children" with some skepticism.

"Even post-Booker, the district court 'must consult [the] Guidelines and take them into account when sentencing.'" United States v. Serrano-Beauvaix, 400 F.3d 50, 55 (1st Cir. 2005) (quoting Booker, 125 S. Ct. at 767).  The Guidelines in this case dictated a sentencing range of 57 to 71 months in prison.  Pursuant to the plea agreement, the district court sentenced Figuereo to the bottom of that range.  Figuereo has failed to demonstrate a reasonable probability that, having consulted the Guidelines, the district court would impose a lower sentence on remand.  His Booker claim therefore fails.

## C. Drug testing and treatment release condition

Figuereo also contends for the first time on appeal that the district court impermissibly delegated authority to the probation officer to decide how many drug tests to administer and whether to order him to attend a drug treatment program if he failed a drug test while on supervised release.  This delegation constitutes plain error under United States v. Meléndez-Santana, 353 F.3d 93 (1st Cir. 2003), in which we held that a sentencing court "may not . . . vest the probation officer with the discretion to order an unlimited number of drug tests" and must determine whether the defendant has to undergo drug treatment "either at the time of sentencing, or later in response to a motion by the

probation officer." Id. at 101-03 (footnote omitted). The government concedes plain error and agrees that this court should remand for limited resentencing on this basis. We therefore remand for an adjustment of the drug testing and treatment portion of the sentence.[7] See United States v. Vega, 398 F.3d 149, 154 (1st Cir. 2005) (vacating the defendant's sentence "only to the extent it delegates the terms of his drug testing and treatment during the period of his supervised release, and remand[ing] for resentencing on this sole issue"). The remainder of Figuereo's sentence is affirmed.

**So ordered.**

_____

[7]The explicit delegation of authority to the probation officer in this case distinguishes it from United States v. Lewandowski, 372 F.3d 470 (1st Cir. 2004) (per curiam), in which we construed a drug testing condition of supervised release to avoid a defect instead of vacating the condition and remanding for resentencing. The drug testing condition at issue in Lewandowski required the defendant to "submit to one drug test within 15 days of release from imprisonment and at least two periodic tests thereafter," but did not specify who had the authority to determine the maximum number of tests. Id. at 470-71. Noting that the determination was not explicitly delegated to a probation officer, we "construe[d] the supervised release condition to avoid any delegation problem . . . [and] to cap the number of drug tests at three." Id. at 471 (emphasis in original).

-11-