In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-4302

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN A. MORENO-PADILLA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 416-1—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED SEPTEMBER 18, 2009—DECIDED APRIL 8, 2010

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and
TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Appellant Juan A. Moreno-Padilla
was indicted on one count of illegal reentry in violation
of 8 U.S.C. § 1326(a) & (b)(2). He pleaded guilty and was
sentenced to eighty months' imprisonment followed by
three years of supervised release. Moreno-Padilla now
challenges his sentence. He disputes two findings
affecting the calculation of his criminal history and

the application of a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A). We affirm.

## I. Background

Juan A. Moreno-Padilla is a citizen of Mexico. He is not a lawful permanent resident or citizen of the United States, but he has lived in the United States essentially continuously since his childhood. Federal officials found Moreno-Padilla living in Chicago with his parents and sister in 2004, and he was deported to Mexico. He returned to the United States illegally in January 2008.

He returned to Illinois upon his reentry, and on March 14, 2008 pleaded guilty to an aggravated DUI offense. He was sentenced to eighteen months in state prison. Officers at the Stateville Correctional Facility became suspicious about Moreno-Padilla's immigration status early on in his incarceration and, on March 18, 2008, alerted federal immigration officials to his presence. Immigration officials placed a detainer on him and took him into custody upon his May 19, 2008 release from Stateville. On May 23, 2008, the federal government filed a criminal complaint in the district court against Moreno-Padilla alleging illegal reentry, and on June 11, 2008, a federal grand jury indicted him on one count of illegal reentry in violation of 8 U.S.C. § 1326(a) & (b)(2).

After Moreno-Padilla's guilty plea to the indictment's only charge on October 1, 2008, a Presentence Investigation Report ("PSR") was prepared using the 2008 Sentencing Guidelines in effect at the time. The PSR assessed Moreno-

Padilla's base offense level at 8, pursuant to U.S.S.G. § 2L1.2(a). Sixteen levels were added pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Moreno-Padilla had prior convictions that qualified as "crime[s] of violence." Three levels were subtracted in recognition of Moreno-Padilla's acceptance of responsibility and timely notification of his intent to enter a plea, U.S.S.G. § 3E1.1(a) & (b), leaving Moreno-Padilla with an offense level of 21.

The PSR's computation of Moreno-Padilla's criminal history requires a more detailed discussion. Moreno-Padilla was convicted of aggravated battery on April 17, 1991. He was sentenced to fifty-four months in prison for that offense on May 21, 1991. In June 1991, while imprisoned for the April 1991 offense, Moreno-Padilla was convicted of another aggravated battery offense. He received a sentence of fifty-one months for the second 1991 conviction, set to run concurrently with his previous sentence. Moreno-Padilla was released from prison on January 24, 1992, and began a term of supervised parole. On March 28, 1992, while he was on parole, Moreno-Padilla was arrested and charged with yet another aggravated battery, this time in connection with a shooting incident in Chicago. He was reimprisoned in the Illinois Department of Corrections on September 4, 1992. He pleaded guilty to the March 1992 aggravated battery on November 2, 1992, and was sentenced to thirty-six months' imprisonment. He was released from prison on June 4, 1993, resumed parole, and was released from that supervision on June 5, 1994.

The parties agree that the June 1993 release date is accurate as to the November 1992 conviction. Moreno-

Padilla insists that the June 1993 release date is accurate *only* as to the November 1992 conviction. The government, on the other hand, claims that because Moreno-Padilla was on parole when he committed the March 1992 offense, his September 1992 reimprisonment stemmed, at least in part, from a revocation of his parole on the 1991 convictions. It goes on to assert that because Moreno-Padilla was not released from confinement until June 1993, the June 1993 release date is applicable to all three aggravated battery convictions. The release date applicable to the 1991 convictions is particularly important in light of U.S.S.G. § 4A1.2(e)(1), which restricts the reach of the PSR's criminal history calculation to convictions imposed or incarcerations served within fifteen years of a defendant's commencement of the instant offense. Moreno-Padilla's instant offense, illegal reentry, was commenced in January 2008 when he crossed the border into the United States. A release date prior to January 1993 for the 1991 convictions would thus render them irrelevant to Moreno-Padilla's criminal history calculation.

The PSR concluded that the three 1991-92 convictions all counted for criminal history purposes. It calculated Moreno-Padilla's criminal history as follows:

- 3 points for the first 1991 aggravated battery conviction, pursuant to U.S.S.G. § 4A1.2(k)(2)(B)(i);

- 3 points for the second 1991 aggravated battery conviction, pursuant to U.S.S.G. § 4A1.2(k)(2)(B)(i);

- 3 points for the 1992 aggravated battery conviction, pursuant to U.S.S.G. § 4A1.2(e)(1);

- 8 points for miscellaneous other offenses, including 3 for the 2008 DUI conviction, pursuant to U.S.S.G. § 4A1.1(a) & (c);

- 3 points pursuant to U.S.S.G. § 4A1.1(d) & (e) because Moreno-Padilla was serving a sentence of imprisonment when he committed the instant offense.

The PSR determined that Moreno-Padilla had twenty criminal history points, which easily placed him in the highest criminal history category, category VI.

With a criminal history in category VI and an offense level of 21, Moreno-Padilla faced a Guidelines sentence range of 77-96 months. In a sentencing memorandum filed prior to his sentencing hearing, Moreno-Padilla's counsel raised two objections to the PSR's Guidelines calculations. First, he argued that Moreno-Padilla should have received four points rather than six for the 1991 convictions because the sentences were concurrent. Second, he argued that the one point added under U.S.S.G. § 4A1.1(e) amounted to impermissible double-counting. Moreno-Padilla also requested that the district court consider the 18 U.S.C. § 3553(a) factors and issue him a sentence below the recommended Guidelines range. Additionally, he objected to the 16-level crime-of-violence enhancement because of its harshness.

At his sentencing hearing, Moreno-Padilla informed the district court that he was dissatisfied with his counsel's

sentencing arguments and requested new counsel. The court declined to provide Moreno-Padilla with a new attorney but continued the hearing to permit Moreno-Padilla to file a pro se memorandum raising his desired sentencing arguments. In that document, which was not provided to the government until the morning of his sentencing hearing, Moreno-Padilla asserted that the PSR erred when it included six criminal history points for his 1991 aggravated battery convictions. He claimed that he "never had any parole hearing or revocation of parole" in connection with the 1991 offenses, and, therefore, the proper release date for them was January 24, 1992, rendering them too stale to be included in his criminal history calculation. Unlike his attorney, who argued that the 1991 convictions should be included in the criminal history calculation but contribute fewer than the PSR-recommended six points, Moreno-Padilla wanted them completely removed from consideration. He also challenged the PSR's inclusion of three points for his 1992 battery because he was released from prison on June 3, 1993, barely more than fifteen years before his June 11, 2008 indictment, and asked for a "downward departure" because the addition of three criminal history points pursuant to U.S.S.G. § 4A1.1(d) & (e) in his view overstated his criminal history.

At the continued sentencing hearing, Moreno-Padilla and his counsel emphasized the parole revocation argument Moreno-Padilla made in his pro se memorandum. Moreno-Padilla's attorney averred that parole revocation without a hearing amounts to a violation of due process. He conceded that he had not had an opportunity to review

any Illinois Department of Corrections records to verify his client's assertion that no revocation proceeding was conducted, but maintained that attribution of the late 1992 imprisonment time to Moreno-Padilla's 1991 convictions could have resulted only from an "automatic" parole revocation, that is, one imposed without the requisite hearing to determine the propriety of revocation.

The district court engaged Moreno-Padilla's counsel in a colloquy about the new line of argument, but it ultimately relied on the PSR and concluded that the 1993 release date was applicable to all three 1991-92 convictions. The district court then noted Moreno-Padilla's unrelated and relatively inconsequential factual objections to the PSR, rejected his other Guidelines arguments, and adopted the PSR's Guidelines calculations. The government asked for a within-Guidelines sentence, and Moreno-Padilla was given the opportunity to raise his 18 U.S.C. § 3553(a) arguments. Neither he nor his counsel brought up his "downward departure" request, though they argued that the 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A) was too harsh.

While sentencing Moreno-Padilla, the district court noted as mitigating factors the age of Moreno-Padilla's prior convictions, his substance abuse problems, his strong family ties, his previous testimony against gang leaders, and the negative impact that a lengthy sentence and probable deportation would have on his aging parents and his two daughters. However, it also noted Moreno-Padilla's twenty criminal history points, his lengthy and continuous criminal history dating back to his teenage

years, the seriousness of some of his past convictions, his tax delinquency, and his general lack of gainful employment. Balancing these factors, the district court concluded that it would impose a within-Guidelines sentence of eighty months, to be followed by three years of supervised release. The district court also recommended that Moreno-Padilla receive substance abuse treatment and agreed to recommend that he be incarcerated near his family in Chicago.

## II. Discussion

Moreno-Padilla argues that he received an inappropriately lengthy sentence. He advances two alternative theories in support of this argument. First, he argues that the district court incorrectly included six points for the two 1991 aggravated battery convictions in his criminal history calculation. He maintains that his sentences for those crimes ended with his January 24, 1992 release, more than fifteen years before he committed the instant offense, because his parole was never revoked and his return to Illinois Department of Corrections custody in September 1992 was solely related to his March 1992 offense. Second, he argues that the district court failed to consider two meritorious arguments he made in favor of a lower sentence. The first argument he claims the district court neglected to consider was that the addition of three criminal history points pursuant to U.S.S.G. § 4A1.1(d) & (e) resulted in an overstatement of his criminal history. He concedes that the addition of these points was legally correct, but asserts that his argument was

meritorious nonetheless because "this was not the type of case the Commission had in mind" when it enacted U.S.S.G. § 4A1.1(d) & (e). Moreno-Padilla also contends that the district court failed to consider his argument that U.S.S.G. § 2L1.2(b)(1)(A)'s 16-level enhancement was too harsh. He further faults it for failing to address his "*Kimbrough*-type argument." *See Kimbrough v. United States*, 552 U.S. 85 (2007). We review each of Moreno-Padilla's arguments in turn.

### A.  Six Criminal History Points for 1991 Convictions

Moreno-Padilla argues that the district court should have omitted the two 1991 aggravated battery convictions from his criminal history calculation because his imprisonment ended fifteen years before he committed the present offense. He contends that his parole for the 1991 offenses was never revoked and that any time he served between January 24, 1992 and his sentencing for the March 1992 offense was exclusively related to the 1992 offense. The district court entertained Moreno-Padilla's eleventh-hour arguments on this point, rejected them, and adopted the PSR's calculation of his criminal history. We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Severson*, 569 F.3d 683, 689 (7th Cir. 2009).

Under U.S.S.G. § 4A1.1(a), a criminal defendant is assigned three criminal history points for each prior sentence of imprisonment exceeding thirteen months. The temporal reach of U.S.S.G. § 4A1.1(a) is limited to prior

sentences imposed or served within fifteen years of the defendant's commencement of the offense for which he or she is presently being sentenced. *See* U.S.S.G. § 4A1.2(e)(1). If a defendant has served time for a parole revocation, the date of last release from confinement is the date that controls for the purposes of U.S.S.G. § 4A1.2(e)(1). *See* U.S.S.G. § 4A1.2(k)(2)(B)(i). If a defendant's parole was not revoked, he could not have served time for a parole revocation, and his date of last release from confinement would be that associated with the termination of his incarceration.

For Moreno-Padilla, such a finding would mean that his confinement for the 1991 aggravated batteries ended in January 1992—sixteen years before his present offense— and that his 1991 convictions are beyond the reach of U.S.S.G. § 4A1.1(a) and cannot contribute to his accumulation of criminal history points. That is the very contention Moreno-Padilla makes.

Moreno-Padilla does not allege that the revocation process he received was constitutionally deficient. (His counsel's argument at sentencing mentioned an abuse of due process, and his appellate briefs contain a truncated discussion of the parole revocation due process requirements formulated in *Morrissey v. Brewer*, 408 U.S. 471 (1972), but he is not substantively contesting the procedural adequacy of the Illinois parole revocation process.) Instead, he is effectively challenging the reasonableness of the district court's finding that his parole on the 1991 convictions was not revoked. In short, he disputes whether revocation took place at all in his case. We con-

sider this argument because it is one contesting the existence of a historical fact, not a collateral challenge to a prior revocation proceeding. *See United States v. Lalonde*, 509 F.3d 750, 767 (6th Cir. 2007) ("[A] defendant in a sentencing proceeding may not collaterally challenge the use of prior convictions or parole revocations for purposes of criminal history calculation unless the challenge is based upon an alleged violation of the right to counsel."); *cf. United States v. Reed*, 94 F.3d 341, 343-44 (7th Cir. 1996) (entertaining defendant's argument that his probation was never revoked).

In Moreno-Padilla's view, he should not have to prove that his parole was not revoked. Instead, he asserts, the government must carry the burden of demonstrating that his parole was revoked. He primarily rests this argument on an Eighth Circuit case, *United States v. Covington*, 133 F.3d 639, 643 (8th Cir. 1998), in which the defendant successfully argued that he should not be considered a career offender because his PSR did not indicate whether he had been imprisoned for a parole revocation or for a new, nonviolent offense. The court remanded Covington's case for resentencing because "[o]nce a defendant objects to a factual allegation in a presentence report" and the court has chosen to make a finding on the matter, "the government must introduce evidence sufficient to convince the Court by a preponderance of the evidence that the fact in question exists." *Covington*, 133 F.3d at 643 (quotations omitted). We recognize that *Covington* is good law in the Eighth Circuit, but in our circuit, the allocation of burdens is different. *See Atchison, Topeka & Santa Fe Ry. Co. v. Peña*, 44

F.3d 437, 443 (7th Cir. 1994) (en banc) ("Our duty is to independently decide our own cases, which sometimes results in disagreements with decisions of the other circuits."), *aff'd sub nom. Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe R.R. Co.*, 516 U.S. 152 (1996).

We have long held that district courts may rely on information contained in a PSR so long as it is well-supported and appears reliable. *See United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009); *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004); *United States v. Mustread*, 42 F.3d 1097, 1101-02 (7th Cir. 1994). And when a court relies on a PSR, "it is the defendant's task to show the trial judge that the facts contained in the PSR are inaccurate." *Mustread*, 42 F.3d at 1101-02. That is, he or she must produce some evidence that "calls the reliability or correctness of the alleged facts into question"; a "bare denial" is not enough. *Id.* at 1102 (quotation omitted). Only when a defendant's objection creates real doubt as to the reliability of the information in the PSR does the government have the burden of independently demonstrating the accuracy of the information. *See id.* Of course, there are some situations in which this general rule does not apply, such as where the PSR itself contains nothing but a "naked or unsupported charge," *id.* (quotation omitted), or "omits crucial information, leaving ambiguity on the face of that document about the nature of a defendant's state sentences," *United States v. McNeil*, 573 F.3d 479, 483 (7th Cir. 2009). This is not one of those cases, however, so it was Moreno-Padilla, not the government, who bore the burden of demonstrating the

inaccuracy of the PSR. Moreno-Padilla failed to carry that burden, both here and before the district court.

It is true that the twenty-five-page PSR prepared for Moreno-Padilla's sentencing does not list a specific date of parole revocation or details about any revocation procedures, but there is no doubt that the district court was warranted in relying on its consistent statements that Moreno-Padilla was released from custody from the 1991 and 1992 offenses on June 4, 1993. The PSR attributed three criminal history points to each of Moreno-Padilla's 1991 battery convictions with a reference to U.S.S.G. § 4A1.2(k)(2)(B)(i), unequivocally implying that revocation occurred. It accompanied these points with the explanation that "in reference to a revocation of parole, the date of last release from incarceration on such a sentence is used to compute criminal history points. The defendant was last released from incarceration in the [first 1991] case on June 4, 1993; therefore, 3 points are added." The PSR further stated that Moreno-Padilla's 1992 offense "led to his not being discharged from parole [on the 1991 convictions] until June 5, 1994." It also stated multiple times that Moreno-Padilla was in the custody of the Illinois Department of Corrections beginning September 4, 1992, two months *before* he pleaded guilty to the 1992 offense, a fact that he does not contest and one from which the district court could reasonably infer that he was serving time due to a parole revocation as of the date of his return to the Illinois Department of Corrections. Moreover, the September 4, 1992 imprisonment was included as part and parcel of the entries for the 1991 aggravated battery convictions, and

it was conspicuously absent from the entry for the 1992 conviction with which Moreno-Padilla asserts it was connected.

In response to the PSR's numerous indications that a revocation occurred, Moreno-Padilla offered only his unsupported recollection that he never received a parole revocation hearing and undeveloped allegations that the Illinois Department of Corrections provided erroneous information to the probation officer who prepared the PSR. We recognize that it can be difficult to prove a negative, but Moreno-Padilla made little, if any, effort to do so here. His claim that his parole was never revoked amounts merely to a "bare denial" of the sort dismissed in *Mustread*. By failing to point to something more, such as documentary evidence, *see Heckel*, 570 F.3d at 796, or an inherent contradiction in testimony used to determine his offense level, *see United States v. Acosta*, 85 F.3d 275, 283 (7th Cir. 1996), Moreno-Padilla has failed to "call[ ] the reliability or correctness of the alleged facts into question," *Mustread*, 42 F.3d at 1102 (quotation omitted).

Because Moreno-Padilla's arguments amount merely to "bare denials" of the PSR's accuracy and fail to call into question the PSR's reliability, we cannot conclude that the district court clearly erred in relying on the PSR. We therefore hold that the six points were properly included in Moreno-Padilla's criminal history calculation.

## B. Failure to Consider Arguments

Moreno-Padilla next argues that the district court erred by failing to consider two of his arguments for a lower sentence. The first argument he alleges the district court failed to consider is that he should have received a "downward departure" because the three criminal history points he received pursuant to U.S.S.G. § 4A1.1 (d) & (e) resulted in an overstatement of his criminal history. He also alleges that it failed to consider his request for a lower sentence in light of the harshness of U.S.S.G. § 2L1.2(b)(1)(A)(ii)'s 16-level "crime of violence" enhancement.

Our review of sentencing decisions proceeds in two steps. *See United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). First, we ensure that the district court did not commit any "significant procedural error," examples of which include failing to calculate, or improperly calculating, the applicable Guidelines range; treating the Guidelines as mandatory; or failing to consider the 18 U.S.C. § 3553(a) factors. *Id.*; *see also Gall v. United States*, 552 U.S. 38, 49-50 (2007) (explaining the procedures a court must follow during sentencing). Once we are convinced that the sentencing judge followed correct procedure, we then consider the substantive reasonableness of the sentence. *Jackson*, 547 F.3d at 792. We presume that within-Guidelines sentences are reasonable, *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), and we review sentences only for abuse of discretion, *see United States v. Turner*, 569 F.3d 637, 640 (7th Cir. 2009).

### 1. U.S.S.G. § 4A1.1(d) & (e) and Overstatement of Criminal History

Pursuant to U.S.S.G. § 4A1.1(d), a criminal defendant receives two criminal history points if he or she "committed the instant offense while under any criminal justice sentence, including . . . imprisonment." Pursuant to U.S.S.G. § 4A1.1(e), a sister provision, a defendant receives an additional criminal history point if he or she committed the instant offense while imprisoned on a sentence longer than thirteen months and has already received two points under U.S.S.G. § 4A1.1(d). Because Moreno-Padilla was serving an eighteen-month sentence in state prison when he was discovered by federal immigration officials, he received points pursuant to both these provisions. He asserts that he was simply "found" by immigration officials while he was in prison for a different offense and did not affirmatively commit illegal reentry while in prison. Once he entered the Illinois prison system, he was no longer able to bring his illegal presence in the United States to an end. Therefore, he contends, the addition of these three criminal history points overstated his criminal history and rendered his sentence excessive. In not explicitly addressing this 18 U.S.C. § 3553(a) argument, Moreno-Padilla argues, the district court erred.

Moreno-Padilla does not dispute that his illegal reentry offense was technically within the broad scope of U.S.S.G. § 4A1.1(d) & (e), and for good reason. Every circuit that has examined the issue has approached it that way. *See United States v. Sopon-Leon*, 328 F. App'x 181, 182 (4th

Cir. 2009) (per curiam) (unpublished); *United States v. Hernandez-Noriega*, 544 F.3d 1141, 1142-43 (10th Cir. 2008); *United States v. Coeur*, 196 F.3d 1344, 1346 (11th Cir. 1999) (per curiam); *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996); *cf. United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009) (per curiam) (allowing counsel to withdraw because "it would be frivolous for [the defendant] to claim that the district court committed plain error by imposing the points [pursuant to U.S.S.G. § 4A1.1(d)] especially since there is no evidence that federal authorities learned about his immigration status before his state imprisonment began"); *United States v. Alba-Esqueda*, 457 F.3d 859, 860-61 (8th Cir. 2006) ("The crime of reentry under § 1326 is an ongoing offense that continues until a person is discovered by authorities. Accordingly, Alba-Esqueda was engaged in 'relevant conduct' the entire time he was in the United States until he was discovered. Because some of this relevant conduct occurred while Alba-Esqueda was in prison and on probation, the district court correctly added the two criminal history points pursuant to § 4A1.1(d)." (citation omitted)); *United States v. Figuereo*, 404 F.3d 537, 540-41 (1st Cir. 2005) (concluding that the district court did not plainly err in applying the § 4A1.1(d) enhancement to a defendant who was found in the United States while imprisoned).

Nor does he suggest that immigration officials were aware of his illegal presence prior to his DUI incarceration and waited to charge him with illegal reentry so as to assess him three extra criminal history points. Instead,

he asserts that a case like his, in which he was simply "found" while in state custody, should not be treated the same as one in which a defendant actively commits a crime like assault while incarcerated. He directs our attention to *United States v. Galvan-Zermeno*, 52 F. Supp. 2d 922, 924 (C.D. Ill. 1999), wherein the district judge asserted that "[t]his sort of circumstance should be distinguished from cases where a person actively commits a criminal act while imprisoned." He also points to *United States v. Contreras-Hernandez*, 277 F. Supp. 2d 952, 955 (E.D. Wis. 2003), for essentially the same support. He argues that these cases demonstrate that his argument, raised only in a single paragraph in his pro se memorandum, was sufficiently substantial to have warranted more overt consideration by the district court. We disagree.

District courts are required to review the 18 U.S.C. § 3553(a) factors and provide a record for us to review, but they are not required to comprehensively discuss each of the factors. *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009). They must "*consider* the factors listed in § 3553(a) and *address* explicitly any substantial arguments" defendants make. *United States v. Martinez*, 520 F.3d 749, 753 (7th Cir. 2008); *see also Villegas-Miranda*, 579 F.3d at 801 (noting that a sentencing court must "address all of a defendant's *principal* arguments that are not so weak as to not merit discussion" (quotation omitted) (emphasis added)). Indeed, we have held that "the sentencing judge can discuss the application of the statutory factors to the defendant not in checklist fashion but instead in the form of an adequate statement

of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). To that end, there is no requirement that a district court extensively address non-principal arguments, or "stock arguments that sentencing courts see routinely," including "how [a defendant's] criminal history category over-represents the seriousness of his prior conviction." *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008).

The court comported with these requirements despite its failure to explicitly mention Moreno-Padilla's "downward departure" argument. The concept of "departures" has become obsolete in our post-*Booker* sentencing framework, so such arguments are now placed in the context of the 18 U.S.C. § 3553(a) factors. *Turner*, 569 F.3d at 640; *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007). Moreno-Padilla's argument about the overstating effects of U.S.S.G. § 4A1.1(d) & (e), buried in an eleventh-hour memorandum and not raised by anyone at the sentencing hearing, including Moreno-Padilla himself, cannot fairly be considered a "principal" argument. Indeed, this argument would become significant only if Moreno-Padilla's previous argument regarding his lack of parole revocation were successful: the three criminal history points from U.S.S.G. § 4A1.1(d) & (e) would only place Moreno-Padilla in an overstated criminal history category if the other six were not included in the calculation. *Cf. United States v. Pulley*, ___ F.3d ___, No. 08-3363, 2010 WL 537574, at *5 n.3 (7th Cir. Feb. 17, 2010)

(noting that "there is no separate need to address the defendant's position within a particular history category separately from the individualized assessment of the defendant"). At worst, the improper inclusion of these points or failure to consider any overstating effect they have would be harmless error, *see United States v. Abbas*, 560 F.3d 660, 666-67 (7th Cir. 2009), for even they were removed from the calculation of his criminal history score the other seventeen criminal history points Moreno-Padilla has amassed would still place him squarely within criminal history category VI, *see* U.S. Sentencing Guidelines Manual Ch. 5, pt. A, at 396 (2008) (indicating that offenders with thirteen or more criminal history points fall into Category VI).

Moreover, the record indicates that the district court gave meaningful consideration to the various § 3553(a) subsections implicated by this argument. The court acknowledged Moreno-Padilla's argument that "the guideline sentence is unduly harsh in this case" and explained that it too was "concerned with the length of the sentence" the Guidelines prescribed for Moreno-Padilla. It explained that there "really isn't much in his history that militates against a sentence that's fairly severe," and determined, after recognizing its discretion to deviate from the Guidelines, that "a guideline sentence is appropriate for this defendant" "for all the reasons that the guidelines themselves acknowledge and recognize." The district court was not required to spell out its assessment of each factor, particularly as to non-principal arguments such as this one; it sufficiently demonstrated

its consideration of Moreno-Padilla's concerns. A district court is never required to accept a defendant's arguments for a lower sentence, *United States v. Filipiak*, 466 F.3d 582, 583 (7th Cir. 2006), and the district court here went far enough in considering Moreno-Padilla's argument.

We note that we agree with Moreno-Padilla to the extent that he argues the district court *could* have given more attention to his argument. The Guidelines are now advisory, *United States v. Booker*, 543 U.S. 220 (2005), and district courts are free to deviate from them at their discretion, *see United States v. Corner*, ___ F.3d ___, No. 08-1033, 2010 WL 935754, at *3 (7th Cir. Mar. 17, 2010) (en banc). For instance, the district court might have adopted Moreno-Padilla's argument on policy grounds. But a district court is never required to deviate from the Guidelines; judicial discretion is a two-way street. *See id.* ("No judge is *required* to sentence at variance with a Guideline, but every judge is at liberty to do so."). Here, the district court plainly exercised its discretion, and it concluded that the Guidelines sentence, which Moreno-Padilla in this respect conceded was correctly calculated, was appropriate.

### 2. Sixteen-Level Enhancement Pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii)

Moreno-Padilla's final argument is that the district court failed to consider his contention that the 16-level enhancement provided under U.S.S.G. § 2L1.2(b)(1)(A)(ii)

is too harsh. U.S.S.G. § 2L1.2(b)(1)(A)(ii) provides a
16-level increase to the base level of 8 for the offense of
unlawfully entering or remaining in the United States
when the defendant has a conviction for a felony that is
a "crime of violence." Moreno-Padilla claims that the
district court did not consider his argument, and main-
tains that it was not frivolous because a scholarly article
decreed the 16-level increase an anomaly within the
Guidelines. He also invokes *Kimbrough v. United States*,
552 U.S. 85 (2007), asserting that the district court was
required to consider his argument and should have
varied his sentence downward in light of it.

Moreno-Padilla's contention that the district court
neglected to address his argument is unavailing because
the record plainly shows that the district court did. The
district court stated:

> And I am also conscious of the fact that we are
> looking at this case, in some respects, as triggered
> by the conduct Mr. Moreno engaged in many
> years ago.

> That's the sense in which I think [Moreno-
> Padilla's counsel] is arguing that the guideline
> sentence is unduly harsh in this case because
> it reflects—or it's based in part upon the fact that
> Mr. Moreno was convicted years ago of violent
> offenses.

> The guideline calculation in this case does con-
> tain—does include—does reflect a relationship
> between a long-ago offense and what brings us
> here today.

At the same time, however, the 20 criminal history points that Mr. Moreno has earned relates [sic] not just to the offense conduct long ago but a total of 28—a number of convictions and 28 arrests, 15 [of] which resulted in convictions and four of those which involved the use of a firearm. Individuals were shot and injured in those offenses.

It is to Mr. Moreno's credit that he testified in at least one incident. But he himself was involved in gun-violence incidents, and this is the reason that he is looking at that very significant 16-point enhancement.

. . . .

And I have to be concerned with the length of the sentence, not only the impact it will have on his family, some of whom I understand are prepared to move to Mexico to be with him, but there is also the fact that previous custody sentences have not apparently had the kind of impact we hoped they would on Mr. Moreno. The fact that he has previously been in custody on a number of occasions didn't stop him from coming back once. And that's one of the reasons that the sentence guideline he is looking at, the guideline sentence here, is so steep.

As is evident from the sentencing hearing transcript, the district court did a thorough job of addressing Moreno-Padilla's concerns about the harshness of the 16-level

enhancement. The court acknowledged the argument he was making and explained why it was unpersuasive in light of his criminal history. Any further exposition on the subject would have been unnecessary.

Moreno-Padilla's cursory invocation of *Kimbrough* is equally without merit. He argues that the Sentencing Commission failed to fulfill its "institutional role" when it prescribed the 16-level enhancement. He points out that the enhancement does not take account of empirical data, national experience, or input from a range of experts in the field. *See Kimbrough*, 552 U.S. at 109. U.S.S.G. § 2L1.2(b)(1)(A) has been criticized on that basis before. *See United States v. Aguilar-Huerta*, 576 F.3d 365, 367 (7th Cir. 2009) (collecting cases). But although "rejecting a guideline as lacking a basis in data, experience, or expertise" is proper in light of a district court's discretion to reject guidelines as inconsistent with its penal theories, *id.*, a district court is not required to "delve into the history of a guideline so that [it] can satisfy [it]self that the process that produced it was adequate to produce a good guideline," *id.* at 368. The district court here did enough to explain why it was following the Guideline; the decision to follow the Sentencing Guidelines is within the court's discretion just as the decision to reject them is. *Corner*, 2010 WL 935754, at *3.

Moreno-Padilla has not demonstrated that the district court misstepped at any point in its discussion of the 16-level enhancement. We therefore affirm Moreno-Padilla's sentence on this ground as well.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Moreno-Padilla's sentence.