**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2014
Decided December 22, 2014

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 14-2096 | Appeal from the United States District Court |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 CR 5 - 1 |
| JUAN QUINONEZ-BARRAZA, *Defendant-Appellant*. | John W. Darrah, *Judge*. |

**O R D E R**

Juan Quinonez-Barraza pleaded guilty to being in the United States without authorization after his removal, *see* 8 U.S.C. § 1326(a), and was sentenced below the guidelines imprisonment range to 51 months. He appeals his prison term, arguing that the district court did not adequately explain why he should not receive an even lower sentence on the ground that the upward adjustment he received because his removal followed a drug-trafficking conviction is too harsh. *See* U.S.S.G. § 2L1.2(b)(1)(A)(i). We conclude that the district court addressed this argument adequately, even though the court was under no obligation to do so. Accordingly, we affirm Quinonez-Barraza's sentence.

Quinonez-Barraza, a Mexican citizen, first came to the United States in 1973. In 1989 he was convicted in federal court of trafficking cocaine and sentenced to a total of 63 months' imprisonment. Immigration authorities removed him in 1993 after his release from prison. He returned and in 1998 was convicted by an Illinois court of delivery of a controlled substance and was removed again in 2000 after his release from prison. He returned to the United States a second time, and in October 2011 he was arrested for a third drug offense and sentenced to 8 years' imprisonment. While serving that Illinois sentence, Quinonez-Barraza pleaded guilty to the § 1326(a) violation.

A probation officer calculated a guidelines imprisonment range of 70 to 87 months, based on a total offense level of 21 and a criminal history category of V. The offense level includes a 16-level upward adjustment under § 2L1.2(b)(1)(A)(i). That increase applied because Quinonez-Barraza had been removed following a drug-trafficking conviction that counted in his criminal-history score and resulted in a prison sentence greater than 13 months. Quinonez-Barraza did not object to this increase or to any other aspect of the probation officer's guidelines calculations. In fact, in a "sentencing position paper," defense counsel conceded that the probation officer's calculations were "technically correct." He argued, though, that a below-range sentence was warranted on the ground that the "guidelines range, although properly calculated, is based on an unduly harsh enhancement." This is so, counsel asserted, because the 16-level increase "under § 2L1.2(b)(1)(A) *triples* the base offense level of eight based on conduct for which a defendant has already been punished." And, counsel continued, immigration crimes received very light sentences before there were guidelines, and although since then the average sentence for all immigration offenses already had risen sharply to 16 months, Quinonez-Barraza faced a low-end term four times that number and 33 months longer than the "average" sentence imposed in all federal prosecutions. The application of § 2L1.2(b)(1)(A) also leads to "double counting," counsel insisted, because "the provision looks to prior convictions to increase the base offense level, when the criminal history provision under Guideline § 4A1.1 also counts the same convictions for enhancing the criminal history category." And "[m]ore troubling," counsel said, "is the fact that the 16-level enhancement is not based on empirical research." In his position paper, though, counsel had only this to say about § 2L1.2(b)(1)(A) and Quinonez-Barraza:

> The unconsidered and problematic nature of the 16-level increase under Guideline § 2L1.2 underscores the need for careful consideration in Quinonez-Barraza's case. Quinonez-Barraza already served a six year sentence for his 1998 drug offense. Yet that case now increases his

recommended sentence from what would be a range of 9 to 15 months without the enhancement (based on a base offense level of eight, minus two for acceptance, and criminal history category V) to a range of 70 to 87 months' incarceration with the 16-level enhancement—a *61-month increase* in the low end of the guidelines range. In addition, Quinonez-Barraza also faces the additional collateral consequence of being forever banned from the United States where his[] children currently reside. (Citation omitted.)

At the sentencing hearing, defense counsel added nothing more to this argument except to say that "the defendant is not eligible for any of the normal good time release or programs within the prison."

The district court accepted the probation officer's calculations. The court agreed that the 16-level increase lacks empirical support and acknowledged that Quinonez-Barraza has strong family ties in the United States. The court concluded, however, that Quinonez-Barraza's life of serious crime in the United States, combined with the absence of any deterrent effect of his previous terms of imprisonment, justified a 70-month sentence. But the court also recognized that Quinonez-Barraza had 19 months remaining on a sentence in state prison before his projected parole date and so imposed a 51-month sentence to run consecutively to that state sentence.

As he summarizes his own argument, Quinonez-Barraza contends that the district court committed a procedural error by not stating why the court "felt the guidelines were appropriate despite agreeing that there was little or no empirical research to justify" the increase under § 2L1.2(b)(1)(A). According to Quinonez-Barraza, he didn't argue in his sentencing position paper that the increase under § 2L1.2(b)(1)(A) should never be applied but instead "took the position that the 16 point bump should not be applied to Mr. Quinonez-Barraza[] given the individualized facts and circumstances of his case." Quinonez-Barraza does *not* contend, however, that the district court failed to address his *other* arguments in mitigation: his "underprivileged beginning," his "nonviolent" criminal history, his strong ties to family and his family's willingness "to make things work" after he is released from prison and removed to Mexico, his long employment record, his age, the sentence he was already serving in state prison, and the collateral consequences associated with his § 1326(a) conviction.

Quinonez-Barraza's procedural argument is unsound for two reasons. First, the district court *did* consider his contention about § 2L1.2(b)(1)(A), even agreeing that "[t]here does not appear to be a great deal of—if any, empirical data" supporting the

deterrent effect of tripling the base offense level when the defendant reenters after a qualifying conviction. In addition, the district court used this consideration to justify a lower sentence. After summarizing Quinonez-Barraza's arguments in mitigation, including his argument concerning the absence of empirical support for § 2L1.2(b)(1)(A), the court concluded that "a sentence at the low end of the guideline range is appropriate." Thus, the record establishes that the district court considered Quinonez-Barraza's arguments in mitigation, and he does not contend that the court's statement of reasons, on the whole, is inadequate to justify the below-range sentence of 51 months. Nothing more is required. *See United States v. Schmitz,* 717 F.3d 536, 541 (7th Cir. 2013); *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012).

Second, although a sentencing court is free to entertain policy arguments about specific guidelines, the court is never obligated to accept or act on a policy argument. *See United States v. McLaughlin*, 760 F.3d 699, 707–08 (7th Cir. 2014); *Schmitz*, 717 F.3d at 542; *United States v. Moreno-Padilla*, 602 F.3d 802, 813–14 (7th Cir. 2010). And contrary to Quinonez-Barraza's premise, the district court's acknowledgment that § 2L1.2(b)(1)(A) lacks empirical support does not mean that the court rejected the 16-level increase as unsound or as inconsistent with the court's own penal theories. *See Moreno-Padilla*, 602 F.3d at 814. An objective critique of the Commission's methodology is not the same as rejection of the Commission's *result*, and Quinonez-Barraza cites no authority for his presumption that one must lead to the other. As we explained recently, "the absence of an empirical basis does not render a guidelines provision *per se* unreasonable or irrational." *McLaughlin*, 760 F.3d at 707.

More importantly here, a district court is not required to address a defendant's argument that a particular guideline provision is categorically unsound. *See Schmitz*, 717 F.3d at 542; *United States v. Ramirez*, 675 F.3d 634, 640 (7th Cir. 2011); *Moreno-Padilla*, 602 F.3d at 814; *United States v. Aguilar-Huerta*, 576 F.3d 365, 367–68 (7th Cir. 2009). That understanding of the sentencing court's procedural obligations applies to § 2L1.2(b)(1)(A). Quinonez-Barraza insists that he did not make a "blanket challenge" to § 2L1.2(b)(1)(A), but rather focused on the "interplay" between the 16-level increase and his personal circumstances. For the most part, though, his contentions are transparently categorical objections to the upward adjustment. He insists, for example, that nonviolent offenses "should not be punished as severely as other more serious crimes," yet with the 16-level increase, he faced a guidelines sentence that at the low end is more than four times the average immigration sentence and thirty-three months longer than the average sentence in all federal criminal cases. This contention is not unique to Quinonez-Barraza; *every* defendant who receives the increase under § 2L1.2(b)(1)(A)(i)

because of a nonviolent drug-trafficking crime would have the same argument. Quinonez-Barraza also contends that the upward adjustment unfairly double-counted his underlying drug crimes by using those offenses to increase both his criminal-history score and base offense level. Again, that contention is not limited to Quinonez-Barraza. No defendant will face a 16-level increase unless the conviction that triggers § 2L1.2(b)(1)(A) counts toward his criminal-history score.

The rest of what Quinonez-Barraza says—that the 16-level increase is unwarranted for defendants like him, who have positive employment records, a low level of educational achievement, a nonviolent history, and strong family ties—has nothing to do with § 2L1.2(b)(1)(A). As arguments in mitigation, employment, educational deficits, and family ties concern the appropriateness of a sentence within the guidelines range, but Quinonez-Barraza never explains how there is "interplay" between these contentions and § 2L1.2(b)(1)(A). And all of them, moreover, are "stock" arguments that the district court was not required to address. *See United States v. Cheek*, 740 F.3d 440, 455–56 (7th Cir. 2014) (nonviolence); *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012) (familial support and "history of gainful employment"); *United States v. Russell*, 662 F.3d 831, 854 (7th Cir. 2011) (education).

AFFIRMED.