NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2017
Decided February 7, 2017

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-2404

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for Northern District of Illinois, Eastern Division. |
| *v.* | No. 14 CR 542-3 |
| JOSE VASQUEZ, *Defendant-Appellant*. | Samuel Der-Yeghiayan, *Judge*. |

**O R D E R**

Jose Vasquez pled guilty to distributing heroin, 21 U.S.C. § 841(a)(1), and admitted to dealing 187 grams of it. In calculating his guideline sentence, the district court found that Vasquez had also distributed a kilogram of cocaine and another 150 grams of heroin. Vasquez appeals his sentence and argues that the district court had insufficient evidence to attribute these unadmitted drug weights to him because during intercepted phone conversations, on which the court relied, Vasquez never used the words "cocaine" or "heroin." But an FBI agent, relying on context and experience, gave an unrebutted sworn statement that Vasquez was discussing cocaine and heroin during

these phone calls. Because the agent's statement is sufficient evidence to support the district court's drug-weight findings, we affirm Vasquez's sentence.

After the government intercepted several phone calls between Vasquez and his co-conspirator Juan Moyano in 2013, Vasquez pled guilty to distributing heroin, a violation of 21 U.S.C. § 841(a)(1). In a plea declaration, he admitted responsibility for distributing, or possessing with intent to distribute, heroin on three occasions in 2013: July 18 (100 grams), August 29 (6.4 grams), and September 30 (80.6 grams)—for a total of 187 grams. Vasquez conceded that this drug weight resulted in a base offense level of 24.

In the presentence investigation report, a probation officer concluded that, in addition to the heroin (187 grams) to which Vasquez admitted, he also was responsible for cocaine (1 kilogram) and additional heroin (150 grams). The officer relied on a government memo summarizing an FBI agent's sworn interpretation of two intercepted conversations between Vasquez and Moyano. That agent relied on "the contents and context of the recorded conversations, [his] knowledge of the investigation as a whole, [his] experience and training, and the experience and training of other [agents] in this investigation." The agent's interpretations of the words in these two conversations appear below in brackets.

The first conversation occurred during a phone call on July 14. Vasquez asked Moyano if he had any "cabbage [cocaine]." After Moyano confirmed that he didn't, Vasquez said "I have a whole one [kilogram of cocaine]." Moyano said "I need to get the real [uncut cocaine]." Moyano asked for the "number [price]." Vasquez responded "9 times 4 is 36 [$36,000]." After some equivocation, Moyano said "bring me la mita [1/2 kilogram of cocaine]." The government interpreted this conversation to mean that Vasquez told Moyano that he had a kilogram of cocaine available for $36,000.

The second conversation occurred on August 1. Vasquez called Moyano and asked him to "[L]ook around and get 40 or 50 [grams of heroin]." Moyano responded, "I thought you had 50," prompting Vasquez to say, "That's already redone [Vasquez had already cut that heroin with unknown additives]." In addition to these 50 grams of heroin, Vasquez also asked for "a dollar [100 grams of heroin]." Moyano said "I called the other guy [unknown supplier] and it is at 70 [$70 per gram of heroin]." The two agreed to talk later that day, and hours later Moyano sent Vasquez a text saying, "That's all u need papi we call tomorrow [they would do the deal the following day]." The probation officer noted that, although Vasquez never said "heroin," one could infer that he was discussing heroin because the unit of measurement was grams, not ounces, and the pricing was consistent with the price of heroin in Chicago at that time.

Based on this evidence, the district court calculated the guidelines range as follows. The total drug weight—the admitted amounts of heroin plus the cocaine and heroin from the two conversations—converted under U.S.S.G. § 2D1.1 to a marijuana equivalent of 537 kilograms. This quantity produced a base offense level of 26. After a 3-level downward adjustment for acceptance of responsibility, the total offense level was 23. When combined with Vasquez's criminal history category of VI, the guideline sentence was 92 to 115 months. If *either* the kilogram of cocaine *or* 150 grams of heroin were not attributed to Vasquez, his total offense level (after the 3-level reduction) would have been 21, instead of 23. The corresponding guideline sentence would have been 15–19 months shorter.

The district court overruled Vasquez's objection that the government had not proven these unadmitted drug quantities by a preponderance of the evidence. Vasquez noted that during the two phone calls he never mentioned heroin explicitly, and he suggested that in the drug trade the term "cabbage" could mean money or marijuana rather than cocaine. He concluded that the total offense level should be 21. The district court disagreed. Looking at "the totality of all the conversations and all the transactions," it found that the government had proven the drug quantities by a preponderance of evidence, and it adopted the probation officer's guideline-sentence calculation. The court sentenced Vasquez to 92 months' imprisonment followed by 6 years' supervised release.

On appeal Vasquez argues that the district court clearly erred in finding him responsible for the unadmitted drug quantities—the additional 150 grams of heroin and kilogram of cocaine—without sufficient reliable evidence.

We review for clear error the district court's finding that the drug weights are supported by a preponderance of the evidence. *See United States v. Brown*, 822 F.3d 966, 976 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 248 (2016); *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007). To determine drug weight, the district court may rely on information reflected in the presentence report if it is reliable. U.S.S.G. § 6A1.3(a); *United States v. Garrett*, 757 F.3d 560, 572 (7th Cir. 2014); *United States v. Noble*, 246 F.3d 946, 951–52 (7th Cir. 2001). When challenging information from the report, the defendant bears the burden of proving unreliability. *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008); *Artley*, 489 F.3d at 821. Information that is only a "naked or unsupported charge" is unreliable. *United States v. Moreno-Padilla*, 602 F.3d 802, 808–09 (7th Cir. 2010); *see also United States v. Vold*, 66 F.3d 915, 920 n.3 (7th Cir. 1995).

Reliable, corroborated, and uncontested information reflected in the presentence report supports the district court's finding that Vasquez sold 150 grams of heroin during

the August call. Although heroin was not mentioned explicitly during that phone call, the government offered an FBI agent's sworn interpretation of the conversation. Based on the context of the discussion and the agent's training and experience, the agent opined that Vasquez was selling 150 grams of heroin. The probation officer confirmed the reliability of that view. The officer explained that the unit of measurement (grams) and the per-unit pricing ($70 per gram) discussed in the phone call were consistent with the current street price of heroin; therefore the discussion supported an inference that the conversation was about heroin and no other drug. Vasquez offered no evidence to dispute the reliability of this inference. The district court did not clearly err by finding that Vasquez dealt 150 grams of heroin during the August call.

The presentence report also contains reliable and unrebutted information supporting the district court's cocaine finding. Vasquez disputes the conclusion that the July phone call—discussing a "whole one" of "cabbage"—was really about a kilogram of cocaine. Unlike the evidence supporting the heroin finding, the agent's interpretation was not corroborated by a unit-of-measurement or per-unit price. The government did argue at sentencing that the price referred to in the phone call ($36,000) was the market price for a kilogram of cocaine. But that argument itself is not evidence. *See United States v. Stevens*, 500 F.3d 625, 628–29 (7th Cir. 2007). The government could have but did not offer testimony from witnesses to establish the price for cocaine. *See United States v. Betts*, 576 F.3d 738, 742–43 (7th Cir. 2009); *United States v. Hankton*, 432 F.3d 779, 790–91 (7th Cir. 2005). Instead, the government provided a call transcript, an FBI agent's sworn interpretation that a whole cabbage was code for a kilogram of cocaine, and the agent's explanation for that interpretation—context and his experience. The call transcript and the agent's sworn, explained interpretation supply a preponderance of reliable evidence. *See United States v. Clark*, 538 F.3d 803, 812–14 (7th Cir. 2008) (deciding that complaint affidavit was reliable evidence); *United States v. Abdulahi*, 523 F.3d 757, 761 (7th Cir. 2008) (concluding that drug ledger, FBI agent's report, and detailed explanation of report's conclusion were reliable evidence of drug-weight). Vasquez offered no evidence to contradict the agent's interpretation. The district court did not clearly err in finding Vasquez responsible for the kilogram of cocaine.

AFFIRMED.