In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1772

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ALAN J. MCNEIL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07-CR-236—**J.P. Stadtmueller**, *Judge*.

ARGUED FEBRUARY 10, 2009—DECIDED JULY 21, 2009

Before CUDAHY, WILLIAMS and TINDER, *Circuit Judges*.

CUDAHY, *Circuit Judge*.  Alan McNeil was arrested for being a felon-in-possession of a firearm while he was on parole from three state convictions. His state parole was revoked due to the felon-in-possession charge and he received three new state sentences. The district court then imposed an 84-month sentence for the felon-in-possession charge, to run concurrent with *two* of those state sentences. It is impossible to tell from the record whether the *third* state sentence had been discharged

when the federal sentence was imposed. Because McNeil and the government agreed to a recommendation that McNeil would receive concurrent time with *any* state sentence he was serving, the district court erred by not determining the status of the third state sentence. We therefore remand McNeil's sentence for the district court to supplement the record regarding the status of that third sentence and to determine whether McNeil should be resentenced in light of it.

McNeil was arrested on July 18, 2007 when Milwaukee police officers executed a narcotics search warrant at the home of McNeil's girlfriend. That night McNeil told the officers that he had hidden a pistol in a heating vent at the home. After obtaining a second search warrant, the officers found the gun where McNeil told them it would be. In December 2007, McNeil pleaded guilty to one count of felon-in-possession, in violation of 18 U.S.C. §§ 922(g), 924(a)(2).

Following his plea, on January 24, 2008, McNeil's parole was revoked on one of his prior state convictions, Case No. 04-CF-1846, and he received an additional state sentence of three months and one day (hereinafter the "2004 sentence," so called because McNeil was convicted and received the original sentence for this offense in 2004). Roughly two weeks later, on February 5, 2008, McNeil's parole was revoked on the other two state convictions, Case Nos. 01-CF-833 and 01-CF-2651, and he received additional sentences of two years, five months and four days for each (hereinafter the "2001 sentences"). Beyond these bits of information, gleaned from the

Presentence Investigation Report (PSR), the record is silent in crucial respects. In particular, the record does not establish whether the 2004 sentence had already been discharged on the date of McNeil's federal sentencing, March 7, 2008. This matters because it appears that the district court would have ordered the federal sentence to run concurrent with *any* state sentence McNeil was serving. If the 2004 sentence had already been discharged, then the court was correct to order the federal sentence concurrent with only the 2001 sentences; the court cannot order a sentence to run concurrent with a nullity, *see* 18 U.S.C. § 3584(a); U.S.S.G. § 5G1.3(c). But if the 2004 sentence had *not* been discharged, it appears from the circumstances that the district court would properly have ordered the federal sentence to run concurrent with all three state sentences. It was incumbent on the district court to figure this out.

Unfortunately, this issue was not addressed at McNeil's federal sentencing hearing. Instead, McNeil urged more generally in his sentencing memorandum, and the government agreed, that "the Court should impose a sentence to run concurrent to the sentence imposed by the State of Wisconsin resulting from McNeil's possession of the firearm charged in this case." At sentencing, McNeil's attorney reiterated that, "[i]n the memorandum I had also asked the Court in fashioning a sentence to consider giving Mr. McNeil concurrent time for the revocation time that he's facing." The government's attorney joined the recommendation for concurrent time, noting that although such a position was unusual for the government, it reflected the need to provide

McNeil with an incentive to plead guilty and also re-warded him for cooperating with law enforcement and for pleading guilty early in the case. McNeil's plea agreement memorializes the parties' joint recommendation that the federal sentence be ordered concurrent with any state sentence resulting from McNeil's gun possession, and the PSR also states that the government "agrees to recommend the sentence be concurrent to *any sentence* imposed by the State of Wisconsin resulting from the defendant's possession of the firearm charged in this case." (Emphasis supplied.)

The district court found that McNeil's guidelines sentencing range was 110 to 137 months, but that it was capped at 120 months by the ten-year statutory maximum. 18 U.S.C. §§ 922(g), 924(a)(2). McNeil requested a reduced sentence of 80 months to reflect his acceptance of responsibility and his cooperation with police. The government's attorney also noted that 110 months, the guidelines minimum, is "a lot of time . . . a good chunk of time," without making any more specific request regarding the length of the sentence. The court imposed a sentence of 84 months, to run concurrent with the two 2001 sentences, but did not mention the 2004 sentence. McNeil's assistant federal defender did not mention it either, much less did she address whether it had been discharged.

In ordering the federal sentence to run concurrent with only the 2001 sentences, it appears that the district court relied on the PSR, which stated that McNeil was on supervised release for only the 2001 sentences at the

time of his arrest for the felon-in-possession charge. In particular, the PSR notes that "[t]he defendant's supervision in Case Nos. 01CF833 and 01CF2651 was revoked for involvement in the instant offense." This section of the PSR does not mention the 2004 sentence.[1] In a separate document included in the record on appeal, entitled "Sentencing Recommendation," the same probation officer who prepared the PSR recommended a 137-month sentence, to run consecutive to the 2001 sentences, again with no mention of the 2004 sentence.

Elsewhere, however, as we have already discussed, the PSR *does* list the 2004 conviction and sentence, in the section on McNeil's criminal history. This section of the PSR makes clear that McNeil was released on parole on October 18, 2005, and that he was still on parole for all three state convictions when he was arrested for the felon-in-possession charge at issue here. Again, his parole was revoked and he was resentenced for the 2004 conviction on January 24, 2008, and for the 2001

---

[1] This section of the PSR also notes that, pursuant to U.S.S.G. § 5G1.3, Application Note 3(C), if the defendant was on parole at the time of the instant offense, and had had that parole revoked, "it is recommended the sentence for the instant offense be imposed to run *consecutively* to the term imposed for the revocation." (Emphasis supplied.) The PSR accurately paraphrases the guidelines application note. Of course, the guidelines are advisory only, and the parties agreed to recommend concurrent, rather than consecutive, time. The district court therefore was within its discretion in declining to adopt this aspect of the recommendation.

convictions on February 5, 2008. The PSR does not specifically address whether the 2004 sentence was discharged at the time the federal sentence was imposed. It merely implies as much by virtue of its recommendation that the federal sentence be ordered to run consecutive to *only* the 2001 sentences. McNeil's attorney did not object to this omission from the PSR or request that the probation officer supplement the record.[2] However, the 2004 sentence could have been imposed in a number of ways. Questions to ask were whether the 2004 sentence was ordered to commence on the date it was issued, or whether, although it was issued two weeks prior to the 2001 sentences, it was ordered to run concurrent with the 2001 sentences, *or* whether it was to run consecutive to the 2001 sentences, and if so, whether the 2004 sentence or the 2001 sentences were to be discharged first.[3]

---

[2] Nor did McNeil's attorney specifically object to the PSR's recommendation that the federal sentence be *consecutive to*, rather than concurrent with, the state sentences. It is clear, however, that McNeil and the government agreed to an order of *concurrent* time, which the district court appears to have adopted.

[3] State law does not help us answer these questions. Wisconsin does not appear to have a rule dictating that sentences initially ordered to run consecutively must, upon revocation of parole and resentencing, also be consecutive. *See State v. Carter*, 208 Wis.2d 142, 154–55, 560 N.W.2d 256, 261 (Wis. 1997) ("When a resentencing is required for any reason, the initial sentence is a nullity; it ceases to exist."); *see also State v.*

(continued...)

Nor does the record indicate whether McNeil received credit for the state time he had already served by the date of his revocation hearing and resentencing in January 2008 (it appears he was in state custody from the date of his arrest in July 2007). If McNeil received credit for seven months of state custody (from the July 2007 arrest until the January 2008 state sentencing), then the 2004 sentence—which, recall, was only for three months and one day—may have been discharged on the date it was imposed. If, however, the 2004 sentence was ordered to run consecutive to the 2001 sentences, he would not have begun serving the 2004 sentence until sometime after the federal sentencing on March 7, 2008. It is also possible that McNeil began serving the 2004 sentence on January 24, the date it was imposed, or on February 5, the date the new 2001 sentences were imposed. In either case, the 2004 sentence would *not* have been discharged by March 7, when the district court imposed the federal sentence.

At oral argument, McNeil's attorney (who did not handle the case in the district court) admitted that he did not know whether the 2004 sentence had been discharged prior to the federal sentencing hearing. The government's attorney (also not the same attorney to handle the case below) did not know either. He argued

---

(...continued)
*Thums*, 295 Wis.2d 664, 672, 721 N.W.2d 729, 733 (Wis. Ct. App. 2006) (finding that on resentencing, "[t]he court may . . . revisit whether the companion charges should be concurrent or consecutive as the court sees fit").

only that it was logical to *assume* that the sentence had been discharged based on the PSR, and urged that the relevant question was whether the district court's reliance on the PSR was *reasonable*.

As we have already discussed, however, the PSR makes it impossible to tell for sure whether McNeil was serving the 2004 sentence at the time of his federal sentencing, and therefore it was unreasonable for the district court not to supplement the record. Moreover, as noted in the PSR, McNeil's plea agreement includes a joint recommendation that the federal sentence be "concurrent to *any sentence* imposed by the State of Wisconsin resulting from defendant's possession of the firearm charged in this case." This provision of the plea agreement is binding on the sentencing court under Federal Rule of Criminal Procedure 11, and therefore the court was required to order the federal sentence concurrent with all undischarged state sentences once it accepted the plea agreement. Fed. R. Crim. P. 11(c)(1)(C) ("[T]he plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."); *see also United States v. Cole*, No. 06-2547, slip op. at 7 (7th Cir. June 30, 2009) (discussing cases). It almost goes without saying that, to fulfill this requirement, the sentencing court was bound to determine the nature and number of *all* of McNeil's undischarged state sentences related to his gun possession.

That the PSR failed to include sufficient information for the district court to make that determination is particularly frustrating given that the Wisconsin Department of Corrections possesses documents that would provide easy answers to these questions. Gathering such information is one of the principal tasks of a probation officer in preparing a PSR. The government's attorney acknowledged that the district court should have ordered the probation office to supplement the record when it determined that the PSR was not clear on this point. The government's attorney also argued, however, that no one brought this *particular* issue to the district court's attention, and therefore that it had not been litigated, so the U.S. Attorney's office did not chase down the state conviction documents.[4] Further, the govern-

---

[4] We emphasize "particular" here because, as discussed above, McNeil's attorney *did* request that the federal sentence be ordered "to run concurrent to the sentence imposed by the State of Wisconsin resulting from McNeil's possession of the firearm charged in this case." The sentence imposed by the State of Wisconsin happens to include the sentence for the 2004 offense; but McNeil's attorney did not spell that out or object to the PSR recommendation, which addressed only the 2001 sentences. Nevertheless, even if McNeil's failure to raise this issue more particularly before the district court subjects his claim to plain error review here, *United States v. Olano*, 507 U.S. 725, 732–36 (1993), as discussed *infra*, we find that the district court plainly erred by not ordering the probation office to supplement the record to determine the status of the 2004 sentence. Moreover, there were other aspects of the probation office's report and sentencing recommendation that

(continued...)

ment's attorney raised a practical difficulty routinely faced by the U.S. Attorney's office: determining where to draw the line on fact-gathering for issues that may never come up.

We recognize that there is a balancing act to be performed here. The government cannot be expected to gather every piece of paper imaginable on the chance that an issue will be litigated. We also emphasize what is obvious: defense attorneys are wise to scrutinize PSRs carefully *before* sentencing and to timely raise ambiguities and discrepancies. But where, as here, the PSR omits crucial information, leaving ambiguity on the face of that document about the nature of a defendant's state sentences, and therefore uncertainty about how the federal sentence ought to be imposed, we find that it is plain error *not* to supplement the record to resolve that ambiguity. *United States v. Olano*, 507 U.S. 725, 732–36

---

(...continued)

should have put the court on notice that they might contain errors and therefore should be read closely. The sentence recommended was 137 months, the top end of the guidelines range and a full 17 months above the statutory maximum. This error was corrected at the sentencing hearing. The probation office also recommended a *consecutive* sentence based on the relevant guidelines application note, U.S.S.G. § 5G1.3, Application Note 3(C), even though the PSR clearly states that the government agreed to *concurrent* time. This discrepancy passed without comment at the hearing, possibly because it is simply the probation office's policy to recommend whatever the guidelines recommend. Yet this inattention to detail should have flagged the need to scrutinize the report.

(1993). The PSR's omission *could have* affected McNeil's substantial rights (we cannot know for sure without reviewing the Wisconsin sentencing documents). If the 2004 sentence had not been discharged at the time of federal sentencing, then the federal sentence would run consecutive to the 2004 state sentence, lengthening the total time served by up to three months and one day. *See United States v. Jackson*, 546 F.3d 465, 472 (7th Cir. 2008) (explaining that if the district court does not specify whether sentences imposed at different times are to run concurrently or consecutively, they will run consecutively) (citing 18 U.S.C. § 3584(a)). This state of affairs certainly affects the fairness and integrity of the judicial proceedings. We exercise our discretion to order a remand for the court to determine whether the 2004 sentence had been discharged. *Olano*, 507 U.S. at 735–36.

McNeil also argues that it was plain error for the district court not to reduce his federal sentence to reflect the seven months and nineteen days he had already spent in state custody at the time of his federal sentencing. McNeil argues that the sentencing transcript makes clear that the court intended his federal sentence to be "fully concurrent" with his state sentences, and that the only way for the district court to impose a "fully concurrent" sentence was to reduce the federal sentence by the amount of time already served on the state sentences. The reason for this conclusion is that the district court lacks the authority to order the Bureau of Prisons to give credit for time served before the federal sentence is imposed. *United States v. Ross*, 219 F.3d 592, 594 (7th Cir. 2000). McNeil concedes that his failure to raise this issue below subjects it to plain error review.

But we see no error here. The district court calculated a guidelines range of 110 to 120 months, and then ordered a reduced sentence of 84 months to reflect McNeil's acceptance of responsibility. The district court was not *required* to reduce the federal sentence to reflect time served in state custody, nor does McNeil argue that it was. Instead, he argues merely that the district court *intended* to order a so-called "fully concurrent" sentence. But nothing in the record reflects such an intent. The district court judge did not say that he wished he could give McNeil credit for time served but that he was unable to do so, nor did he attempt to order the Bureau of Prisons to give him such credit, which, as we have already stated, he was not authorized to do. Nor did the judge state that he wished to make the sentences "fully concurrent." McNeil makes no showing of error here, much less of plain error, and therefore we do not displace this aspect of the sentence.

We REVERSE AND REMAND McNeil's sentence, so that the district court may supplement the record to determine the status of the 2004 sentence and whether the federal sentence should be ordered to run concurrent with it as well as with the 2001 sentences.