In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2862

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CRANE MARKS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 CR 330-9 — **Virginia M. Kendall**, *Judge.*

ARGUED JUNE 7, 2017 — DECIDED JULY 24, 2017

Before RIPPLE, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal illustrates why, when
an arcane and arbitrary issue arises under the Sentencing
Guidelines, the sentencing judge should ask, "Why should I
care?" That question was not asked here, so we must remand
for resentencing.

Defendant-appellant Crane Marks pled guilty to conspir-
ing to distribute heroin. He was sentenced to nine years in

prison (108 months). That sentence is either well above or well below the advisory range under the Sentencing Guidelines, depending on one issue in calculating Marks' criminal history. The district court decided the issue against Marks, and he has appealed his sentence.

In all candor, that one issue seems astonishingly technical and trivial. It has nothing to do with Marks' culpability or the larger goals of sentencing. As we explain below, the issue is whether, when Marks was imprisoned on his fourth state drug conviction in 2000, he also had his state parole revoked on any of his earlier state drug convictions and was re-imprisoned on that revocation as well. From this description of the issue, we hope readers will agree that this is one of those guideline issues that should prompt the sentencing judge to ask why the judge or anyone else should care about the answer.

Because the issue seems so technical and trivial, we have examined the record in this case for any signs that the judge would have given Marks the same sentence regardless of how the technical criminal history issue was resolved. We found no such signs, however, so we have considered the technical guideline issue on the merits. We conclude that the court made both a legal error and a factual error. The legal error was that the court did not make the finding needed to treat Marks as a career offender under the Guidelines. The factual problem is that the court was not presented with reliable evidence from which it could have found that Marks was imprisoned on a revocation of parole on any earlier conviction. That means that Marks does not qualify, technically, as a career offender. His advisory guideline sentencing range is lower than

the range found by the district court. We therefore vacate Marks' sentence and remand for resentencing.

To explain, in October 2013, Marks joined a conspiracy to distribute heroin in violation of 21 U.S.C. §§ 846 & 841(a)(1). In 2015 he pled guilty to that crime. At the time of plea negotiations, the government knew that Marks had been convicted of controlled-substance offenses in state court in 1994, 1995, 1996, and 2000. The government did not then believe Marks was a career offender under U.S.S.G. § 4B1.1 because of the age of the offenses from the 1990s. For the career-offender Guideline to apply, at least two of those four convictions would need to count for criminal history points. See U.S.S.G. § 4B1.1(a)(3). For a conviction to be counted, Marks had to have been still serving a sentence of imprisonment on that conviction within 15 years of his commencement of the offense of conviction in this case. See U.S.S.G. § 4A1.2(e)(1).

Since Marks commenced his involvement in the conspiracy in October 2013, a prior conviction counts under the Guidelines only if he was incarcerated on the conviction after October 1998. The 2000 conviction definitely counts. The question is whether any of the 1990s convictions count. The parties agree that Marks was paroled on all of the 1990s offenses in June 1998. But if his parole was revoked for any of the 1990s offenses when he committed the new drug crime in 2000, the term of incarceration on the revocation would fall within the 15-year window, the conviction would count, see § 4A1.2(k)(2)(A), and Marks would be treated properly as a career offender under § 4B1.1(a).

In their plea agreement, the parties acknowledged that Marks would receive criminal history points only for the 2000 conviction, not the earlier offenses. On that understanding

they projected a guideline prison range of 51 to 63 months. The probation officer who wrote the presentence report came to a different conclusion. Based on handwritten records from the Illinois Department of Corrections, the officer concluded that Marks' imprisonment in 2000 was based not only on his 2000 conviction but also on revocation of his parole for one or more of the earlier convictions.

There is no formal court order revoking parole. The IDOC records, which are appended to the presentence report, do not include any narrative explaining whether Marks' parole was revoked or what type of custody he was in at any particular time. The three records read in their entirety as follows:

**Case #94CR7913**

Offense Date: 2-21-94
Date Sentenced: 8-15-95
Admitted to IDOC: 8-18-95
Escape Out: 2-21-96
Escape Return: 2-28-96
Escape Out: 4-4-96
Escape Return: 7-26-96
Discharge of Sentence: 5-22-00

**Case #95CR21777**

Offense Date: 6-22-95
Date Sentenced: 8-15-95
Admitted to IDOC: 8-18-95
Escape Out: 2-21-96
Escape Return: 2-28-96
Escape Out: 4-4-96
Escape Return: 7-26-96
Discharge of Sentence: 5-22-00

**Case #96CR1549301**

Offense Date: 5-7-96
Date Sentenced: 7-23-96
Admitted to IDOC: 7-26-96
Parole Out: 6-26-98
Violator Return: 2-8-00
Discharge of Sentence: 6-26-00

These records say that Marks' sentences for the 1994 and 1995 convictions were "discharged" on May 22, 2000 and that the sentence for the 1996 conviction was "discharged" on June 26, 2000. The records for the 1994 and 1995 conviction do not list

a parole date. In fact, they do not show that Marks was ever in prison on those two convictions. Other information in the presentence report shows that he was on electronic monitoring—not in prison—when he escaped and returned to custody. The record for the 1996 conviction, however, lists a "Parole Date" in 1998 and a "Violator Return" date of February 8, 2000, the same day Marks pled guilty to the 2000 offense. Based solely on these records, the probation officer inferred that all four controlled-substance convictions counted under the federal Guidelines so that Marks qualified as a career offender.

At sentencing Marks disputed the career-offender issue. He asserted that he did not recall his parole ever being revoked on any of the 1990s convictions. Without proof of a parole revocation that returned him to prison on one of these convictions, Marks argued, they do not fall within the 15-year window under § 4A1.2(k)(2)(A).

The district court did not make an explicit finding about whether Marks had been imprisoned again on a parole revocation of any of the 1990s convictions. The court concluded, though, that each conviction counted because the sentences were not "discharged" until 2000. On that basis, the court found that Marks was a career offender and that his imprisonment range was 151 months to 188 months. In pronouncing sentence, however, the court said that Marks did not fit the profile of the typical career offender. The court sentenced him to 108 months—43 months below the low end of the calculated range, but 45 months above the top of the guideline range without the career-offender finding.

On appeal, Marks renews his argument that the district court erred by classifying him as a career offender because his

1994, 1995, and 1996 convictions are too old to count. He con-
tends that the government did not meet its burden of showing
that he was sent back to prison on a revocation of his parole
on any of those offenses when he committed a new drug
crime in 2000. If anything, Marks asserts, the IDOC records
prove only that he was in state custody at the time his parole
expired on the 1990s convictions. The records do not prove,
he argues, that he was actually imprisoned again on any of
those convictions.

The government argues that the district court reasonably
relied on the statement in the presentence report that Marks'
parole had been revoked. The government contends that the
probation officer's statement in the report is proven by the
three IDOC records, which, in the government's view, "clearly
state" that Marks was "in custody some time during the Oc-
tober 1998 through October 2013 window." That argument
misses the point. Marks was in custody during that window,
but under the text of the Guidelines, for any one of the 1990s
convictions to count, Marks must have been incarcerated *on
that conviction*, not just on his 2000 conviction. After June 1998
he could not have been serving prison time on any of the
1990s convictions unless his parole on that conviction was re-
voked.

For two reasons, one legal and one factual, we cannot sus-
tain the district court's application of the career-offender
Guideline, § 4B1.1. First, the transcript of the sentencing hear-
ing indicates substantial legal confusion about which guide-
line provision was being applied and what factual findings
were necessary. Second, the government failed to offer suffi-
cient evidence to show as a matter of fact that Marks' parole
was revoked on at least one of his 1990s convictions.

To the first point, the district court and the parties were not on the same page about what is required to count an older conviction under § 4A1.2(k)(2), which explains how and when to count a prior offense when parole has been revoked on it. The government had to show that Marks' parole on one of the three older convictions was revoked and that he was re-imprisoned based on that revocation. See *United States v. Moreno-Padilla*, 602 F.3d 802, 808 (7th Cir. 2010). The probation officer testified at sentencing that an IDOC administrator had told him Marks was in IDOC custody "all the way up until some time in 2000" when his parole terms expired.

The broad concept of "custody" is not enough under § 4A1.2(k)(2). The focus is "incarceration." Proving that Marks' parole terms did not *expire* until 2000 was not enough—the government had to show that Marks was *incarcerated* on at least one of those convictions. See § 4A1.2(b)(1) ("sentence of imprisonment" means "a sentence of incarceration"). And under Illinois law, a person remains in IDOC custody even while serving a parole term outside of prison. See 730 ILCS 5/3-14-2(a); *Cordrey v. Prisoner Review Bd.*, 21 N.E.3d 423, 429 (Ill. 2014). So it matters what *type* of custody Marks was in for his 1990s convictions between October 1998 and 2000—in a prison or in some other, less restrictive form of custody. The IDOC records show that Marks remained under IDOC control—in its "custody"—on the 1990s convictions until May or June 2000.

The problem is that those records do not show incarceration, which is what matters under the federal Guidelines. In short, to apply the career-offender Guideline properly, the district court had to decide first whether Marks' parole on any of the 1990s convictions was revoked, and second whether he

was sent back to prison *because of such a revocation*. It was a legal error to find that Marks was a career offender without making these findings. See *United States v. Titus*, 821 F.3d 930, 934 (7th Cir. 2016).

The second problem, the factual one, is a distinct problem with the district court's guideline calculation. As we view the record, the district court lacked reliable evidence to answer these questions so as to support application of the career-offender Guideline.

As a general rule, a sentencing judge may rely on a presentence report if it "is well-supported and appears reliable." *United States v. Black*, 636 F.3d 893, 897 (7th Cir. 2011); see *United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009); *United States v. Mustread*, 42 F.3d 1097, 1101–02 (7th Cir. 1994). But if a presentence report contains "nothing but a naked or unsupported charge," the defendant's denial will suffice to call the report's accuracy into doubt. *Mustread*, 42 F.3d at 1102. Similarly, if the presentence report "omits crucial information, leaving ambiguity on the face of that document," the government has the burden of independently demonstrating the accuracy of the report. *Moreno-Padilla*, 602 F.3d at 809.

The government emphasizes that Marks did not produce any evidence to prove that his parole had not been revoked. The government cites *Moreno-Padilla*, 603 F.3d at 807–09, a factually similar case in which the defendant challenged an assertion in the presentence report that his parole on an earlier conviction had been revoked within 15 years of his commission of the offense of conviction. In *Moreno-Padilla* we repeated our familiar admonition that, when faced with a presentence report that is well-supported and facially reliable,

the defendant cannot stand by and do nothing. He must instead show the judge that disputed factual information in the report is inaccurate. 602 F.3d at 808–09.

*Moreno-Padilla* does not say, however, that *any* factual assertion that finds its way into a presentence report may be accepted uncritically by the sentencing judge. Rather, we pointed out that statements about the defendant's parole having been revoked were corroborated by other details. The defendant had been in a state prison, not a local jail, for two months before pleading guilty to a new charge. That suggested that the period of incarceration was for a parole revocation rather than pretrial detention on the new charge. Also, the defendant's parole term on the earlier conviction extended beyond the new term of incarceration. *Id.* at 805, 809.

Marks, on the other hand, was not sent back to prison until after he pled guilty to the new offense in 2000. There is no indication that any of his 1990s sentences were extended beyond what they would have been if the 2000 offense had not occurred. Rather, his sentences on the 1990s convictions all terminated in 2000 even though he was not paroled on the 2000 offense until 2002.

In short, Marks did not have the burden of producing contrary evidence because this assertion in the presentence report was not reliable on its face. When read as a whole—the text as well as the underlying IDOC records incorporated as exhibits—the presentence report "omits crucial information, leaving ambiguity on the face" of the report concerning whether Marks' parole on any of the 1990s convictions had been revoked and he had been imprisoned on any of them. See *Moreno-Padilla* 602 F.3d at 809 ("If a defendant's parole was

not revoked, he could not have served time for a parole revocation."); *United States v. McNeil*, 573 F.3d 479, 483–84 & n.4 (7th Cir. 2009) (district court plainly erred by not ordering probation office to supplement presentence report where omission of crucial information created uncertainty about how federal sentence should be imposed). Indeed, the probation officer's testimony showed that he asked the IDOC administrator the wrong question: whether Marks was "in custody" rather than whether he was incarcerated on parole revocation for the 1996 conviction. That discrepancy undermines the government's reliance on the records to prove that Marks was imprisoned on a parole revocation.

As for the 1994 and 1995 convictions, the IDOC records demonstrate only that Marks' sentences were discharged on May 22, 2000. The records say nothing about a parole revocation—ever—or a return to prison on any date after 1996, let alone on February 8, 2000, the date he was imprisoned on the 2000 offense. In fact, the records for these two convictions seem incomplete. Each report lists the date Marks was first admitted to IDOC custody, the dates he escaped from and was returned to custody, and the date his sentence was discharged. Neither report explains what type of custody Marks was in or gives a parole or release date. Marks obviously was released from prison at some point between the date he was admitted into IDOC's custody in 1995 (on the same date for both convictions) and the date his sentences were discharged, because he was arrested twice in 1999 while outside of prison. And the presentence report explains that Marks was on electronic monitoring (not imprisoned) when he "escaped" IDOC custody twice in 1996.

Taken at face value, these records fail even to prove that Marks' sentences on these convictions ever met the guideline definition of "imprisonment," let alone that he was reincarcerated in 2000 due to a parole revocation. This court and most other circuits hold that sentences served in community treatment centers, halfway houses, home detention, or other forms of probation are not imprisonment for guideline purposes. See, e.g., *United States v. Timbrook*, 290 F.3d 957, 959–60 (7th Cir. 2002) (noting that Guidelines do not elaborate on definition of incarceration but explaining that residence in nonsecure community treatment center or halfway house is not imprisonment for guideline purposes); *United States v. Phipps*, 68 F.3d 159, 162 (7th Cir. 1995) (home detention not imprisonment for guideline purposes); *United States v. Gordon*, 346 F.3d 135, 138–39 (5th Cir. 2003) (same); *United States v. Pielago*, 135 F.3d 703, 711–14 (11th Cir. 1998) (community treatment center not imprisonment for guideline purposes); *United States v. Jones*, 107 F.3d 1147, 1161–65 (6th Cir. 1997) (home detention not imprisonment for guideline purposes); *United States v. Latimer*, 991 F.2d 1509, 1514 (9th Cir. 1993) (community treatment center not imprisonment for guideline purposes); but see *United States v. Rasco*, 963 F.2d 132 (6th Cir. 1992) (holding that confinement in community treatment center after parole revocation was part of original term of imprisonment).

The IDOC record for the 1996 conviction also does not support the needed finding. Unlike the other two records, it at least includes the word "parole." But it indicates only that Marks was returned to custody in February 2000, not why he was returned to custody. The document lists Marks' "Parole Out" date as June 26, 1998, his "Violator Return" date as February 8, 2000, and his "Discharge of Sentence" date as June

26, 2000. While the term "Violator Return" could refer to a violation of parole, that meaning is neither explicit nor obvious.

As Marks points out, the records do not contain any narrative showing that he was given a new term of imprisonment for violating parole, or whether he was merely noted as being in custody on a potential parole violation. The fact that Marks' sentence on this 1996 conviction (as well as the 1994 and 1995 convictions) was discharged only a few months after he pled guilty to the 2000 charge suggests that no revocation occurred. And it is difficult to understand why, if Marks' parole was actually revoked, the government could not have supported the presentence report with a copy of the order of revocation. See *McNeil*, 573 F.3d at 483 (explaining that "gathering such information is one of the principal tasks of a probation officer in preparing a PSR"). In its brief and oral argument, the government has not suggested that it obtained any other documents supporting its contention that a revocation occurred.

So, coming up for air from the minutiae of the IDOC records, we must conclude that the district court's decision to treat Marks as a career offender under the Guidelines was an error. And despite the sometimes arbitrary limits in the calculations, the guideline range must be properly calculated. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). An incorrect calculation of the Sentencing Guidelines is a procedural error that we presume influenced the judge's choice of sentence, unless the judge said otherwise. See *United States v. Adams*, 746 F.3d 734, 743 (7th Cir. 2014); see generally, *Molina-Martinez v. United States*, 578 U.S. —, —, 136 S. Ct. 1338, 1347–48 (2016) (even unpreserved error in calculating guideline range is presumed

to affect defendant's substantial rights, at least if sentencing court did not suggest it would have imposed same sentence absent the error).

With all that said, we return to the question we raised at the outset. Why should anyone care? Marks came before the district court with four prior convictions for drug felonies. Whether or not state officials took the formal step, when Marks was imprisoned on the fourth drug conviction in 2000, of revoking his parole on any of his three prior drug convictions has no apparent connection to the purposes of sentencing: reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence of criminal conduct, protecting the public from further crimes by Marks, and providing him with needed correctional treatment. See 18 U.S.C. § 3553(a)(2).

If the sentencing court had asked why anyone should care, it might have explained at the time of sentencing that the answer to the technical guideline question simply did not matter to the court's final sentencing decision. That did not happen here, though. The court did not say that it would have imposed the same sentence whether or not Marks technically qualified as a career offender under the Guidelines.

The fact that the Guidelines present some technical and arbitrary questions, as in this case, does not show a flaw in the Guidelines as a whole. They are a comprehensive and detailed system. They try to capture a broad range of factors relevant to sentencing. Such a comprehensive and detailed system of advice that takes into account the seriousness of criminal conduct and the defendant's criminal record must necessarily include some arbitrary rules and cutoffs. One example is the 15-year requirement in § 4A1.2(e), which can be even

more arbitrary as applied to parole revocations under
§ 4A1.2(k)(2).

The sometimes arbitrary aspects of criminal history calcu-
lations have long been recognized by the Sentencing Commis-
sion itself. Even the original 1987 version of the Guidelines
encouraged departures based on the often-arbitrary features
of the criminal history calculations. See U.S.S.G. § 4A1.3
(1987). Both when the Guidelines were treated as binding and
now when they are advisory, the presence of such a technical
and arbitrary issue should prompt a sentencing judge to ask
him- or herself why anyone should care.

Even if the 1990s drug convictions are too old to count for
guideline purposes, the court may still consider them in eval-
uating Marks' criminal history under § 3553(a). See
§ 4A1.3(a); 18 U.S.C. § 3661. In the end, Marks' extensive crim-
inal history may justify a sentence above the range that ap-
plies without the career-offender Guideline (51 to 63 months),
but that is a question for the district court.

We VACATE Marks' sentence and REMAND for re-sen-
tencing consistent with this opinion.