In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2707

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FELIPE ZAMORA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cr-00184-2 — **John Z. Lee**, *Judge.*

ARGUED SEPTEMBER 17, 2020 — DECIDED DECEMBER 15, 2020

Before KANNE and HAMILTON, *Circuit Judges.*\*

HAMILTON, *Circuit Judge.* While appellant Felipe Zamora
was in a federal correctional facility awaiting resentencing for
past offenses, he began paying a guard to smuggle contra-
band into the facility. Once the smuggling operation was

\* Then-Circuit Judge Barrett was a member of the panel when this case
was argued but did not participate in the decision and judgment. The ap-
peal is resolved by a quorum of the panel under 28 U.S.C. § 46(d).

discovered, Zamora pleaded guilty to bribing a federal official. The Sentencing Guidelines call for a four-level enhancement for bribery offenses that "involved … any public official in a high-level decision-making or sensitive position." U.S.S.G. § 2C1.1(b)(3). The district court held that the guard was a public official in a sensitive position and applied the four-level enhancement. Zamora argues that the court erred because the prison guard was a low-level official with little discretionary authority and therefore did not hold a sensitive position. But the Guideline's commentary, which generally binds us on issues of interpretation, explains that officials in sensitive positions include those who are situated similarly to a law enforcement officer. We conclude that a non-supervisory prison guard fits within this guidance.

I.    *Factual and Procedural Background*

Appellant Felipe Zamora was a high-ranking member of the Latin Kings gang in Chicago. In 2009 he pleaded guilty to an extortion and racketeering conspiracy. See *United States v. Zamora*, 835 F.3d 684, 685 (7th Cir. 2016). After two successful challenges to his sentence, Zamora was transferred to the Metropolitan Correctional Center in Chicago (MCC) to await resentencing. There, he hatched a scheme with his sister and Rafael Lizak, a Bureau of Prisons guard at the MCC, to smuggle contraband into the prison.

To carry out the scheme, Zamora took orders from fellow inmates for desired contraband and directed his sister to obtain the items. She would pass the contraband—synthetic marijuana, cigarettes, and cell phones—to Lizak, who used his position as a guard to smuggle the items into the prison. Lizak delivered the items to Zamora, who sold them at a profit. Zamora told his sister to pay Lizak $1,000 per delivery. Over six

months, the group smuggled four loads of contraband into the MCC before Lizak withdrew from the scheme. Zamora told his sister to offer Lizak $5,000 to smuggle another cell phone, but Lizak refused.

Zamora was charged with conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 and giving and offering bribes to a federal official in violation of 18 U.S.C. § 201(b)(1)(C). He pleaded guilty to the bribery charge, and the government dismissed the conspiracy charge under a plea agreement. Zamora admitted in the agreement that he bribed Lizak with the intent to induce him to violate prison rules on contraband.

The district court calculated Zamora's guideline sentencing range using § 2C1.1 of the Sentencing Guidelines. The court started with a base offense level of 12 and then added several enhancements, including a four-level enhancement because the offense "involved … [a] public official in a high-level decision-making or sensitive position." U.S.S.G. § 2C1.1(b)(3). Zamora objected to this enhancement, arguing that Lizak did not qualify because he lacked decision-making authority at the correctional facility. The district court overruled the objection, explaining that although Lizak "may not have had high level decisionmaking authority," a prison guard qualifies as a "sensitive position." Zamora appeals his sentence.[1]

---

[1] Zamora challenges the use of the § 2C1.1(b)(3) enhancement in calculating his guideline range. The district judge ultimately imposed a 60-month sentence that exceeded Zamora's guideline range either with or without the enhancement. Nevertheless, an error in calculating the guideline range is "a procedural error that we presume influenced the judge's choice of sentence, unless the judge said otherwise." *United States v. White*, 883 F.3d

II.  *Discussion*

Zamora presents two arguments on appeal. First, he argues that Lizak did not hold a sensitive position because non-supervisory BOP guards have very little authority. Second, he asserts that even if Lizak held a sensitive position, the sensitive-position enhancement does not apply to the type of bribery he committed. We reject both of these arguments and affirm the district court's judgment.

A.  *Lizak Held a Sensitive Position*

In a federal bribery case, § 2C1.1(b)(3) of the Guidelines instructs the sentencing court to increase the base offense level by four "if the offense involved an elected public official or any public official in a high-level decision-making or sensitive position." "Whether an individual is a public figure in a high-level decision making or sensitive position is a factual determination, reviewable for clear error." *United States v. Johnson*, 874 F.3d 990, 1002 (7th Cir. 2017).

The phrase "high-level decision-making or sensitive position" is a term of art defined in the guideline commentary, which is treated as authoritative unless it conflicts with the text of the relevant Guideline. See *Stinson v. United States*, 508 U.S. 36, 38 (1993). Application Note 4(A) defines a "high-level decision-making or sensitive position" as one "characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making

---

983, 987 (7th Cir. 2018), quoting *United States v. Marks*, 864 F.3d 575, 582 (7th Cir. 2017). Here, the district judge never said that the disputed guideline issue would *not* affect the final sentence, so we cannot treat as harmless the arguable error in the advisory guideline calculation. *Id.*

process." U.S.S.G. § 2C1.1 cmt. n.4(A). The parties agree that Lizak was not a high-level decision-maker. The question is whether he held a "sensitive position."

Application Note 4(B) advises: "Examples of a public official who holds a sensitive position include a juror, a law enforcement officer, an election official, and any other similarly situated individual." § 2C1.1 cmt. n.4(B). Relying on Application Note 4(B), other circuits have concluded that prison guards hold sensitive positions under § 2C1.1(b)(3), in part because they seem fairly similar to law enforcement officers. See *United States v. Dodd*, 770 F.3d 306, 312 (4th Cir. 2014) (federal correctional officer); *United States v. Griffith*, 781 F. App'x 418, 421 (6th Cir. 2019) (same); *United States v. Grosso*, 658 F. App'x 43, 46–47 (3d Cir. 2016) (county correctional officer); *United States v. Guzman*, 383 F. App'x 493, 494 (5th Cir. 2010) (same).

Those decisions are persuasive. In many ways, federal prison guards are law enforcement officers. They bear the front-line responsibility for detecting crime and rule violations within a prison's walls and are authorized to use force and to make arrests to carry out that responsibility. See 18 U.S.C. § 3050. In other statutory contexts, the Supreme Court and this court have held that prison guards are a type of law enforcement officer. See *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218, 227–28 (2008) (holding a Bureau of Prisons guard is a "law enforcement officer" under the Federal Tort Claims Act); *United States v. Sababu*, 891 F.2d 1308, 1328–29 (7th Cir. 1989) (holding Bureau of Prisons' practice of recording prisoner calls qualified as wiretapping by "an investigative or law enforcement officer" under Title III of the Omnibus Crime Control and Safe Streets Act).

Zamora argues that the example of law enforcement officers in Application Note 4(B) should not reach prison guards on the theory that even non-supervisory police officers have far more discretion than prison guards. Guards, he asserts, are not situated similarly to the law enforcement officers who qualify under the Guideline because non-supervisory guards lack the requisite "authority to make decisions for, or on behalf of, [the] government," § 2C1.1 cmt. n.4(A). Zamora notes that, unlike a highway patrol officer who has broad discretion to give a speeding motorist a warning instead of a citation, guards like Lizak are bound by rigid prison policies requiring a supervisor's approval even before allowing an inmate to visit other cells, to make unscheduled trips to the library, or to use a television, telephone, or computer after hours. Zamora maintains that Lizak's discretion was limited to only the most minor decisions, like giving inmates extra food or essential toiletries.

We agree that § 2C1.1 probably calls for some level of decision-making authority on the part of an official deemed to have a "sensitive position," but we are not persuaded that prison guards fall outside the scope of the Guideline. Before the Sentencing Commission amended § 2C1.1 in 2004, Application Note 4(B) included only "supervisory" law enforcement officers in its examples of officials holding sensitive positions. Under that earlier version, Zamora would have had a stronger argument. But in 2004, Note 4(B) was broadened. The word "supervisory" was stricken, indicating that the definition should include all law enforcement officers. See U.S.S.G. App. C, Amendment 666 (Nov. 2004). The amended, broader application note interprets the Guideline, and that broader scope is persuasive (keeping in mind that, at this point, of

course, all the Sentencing Guidelines and their application notes are only advisory).

The better course is to interpret the Guideline in a way that reaches bribery of officials with decision-making authority comparable to at least front-line, non-supervisory police officers. While a prison guard's duties surely differ from a highway patrol officer's, for example, federal prison guards have enough law-enforcement authority to fall within the guidance. First and foremost, like police officers, guards are authorized to carry firearms and to make warrantless arrests on behalf of the Bureau of Prisons for a broad array of crimes, including assault, escape, trespass, theft, contraband, or "any other offense … if necessary to safeguard security, good order, or government property." 18 U.S.C. § 3050. These powers confer substantial decision-making authority. See *Guzman*, 383 F. App'x at 494 ("A prison guard has the authority and the ability to directly and significantly influence inmates' lives and the entire facility's safety with the decisions he or she makes.").

Supervising inmates and maintaining order within a prison may entail some police-like discretion. Consider the actual policy Zamora bribed Lizak to violate: preventing inmate possession of contraband, including illegal drugs. Police officers and prison guards both investigate and enforce rules against drug possession and smuggling in a way that necessarily entails discretion. No policy can delineate ahead of time exactly when and to what extent police officers or prison guards will investigate an individual suspected of possessing or trafficking drugs. Although laws, policies, and supervisors' instructions constrain their discretion, police and prison guards alike must decide whether to investigate based on the

circumstances before them. See *United States v. Reneslacis*, 349
F.3d 412, 416 (7th Cir. 2003) (positions can be "sensi-
tive … even if existing rules dictate how th[eir] decisions
should be made"). The facts of this very case suggest Lizak
enjoyed considerable authority and discretion even as a non-
supervisory guard. He was able to use his position of author-
ity to smuggle drugs and cellphones to Zamora for months
without detection.

In short, prison guards are situated similarly to law en-
forcement officers for purposes of § 2C1.1(b)(3) as explained
in Application Note 4(B). "The men and women who occupy
these positions wield the coercive power of the state to main-
tain order and safety among the populations they protect.
They are responsible for enforcing the rules." *Dodd*, 770 F.3d
at 312. We therefore affirm the district court's finding that
Lizak, a non-supervisory prison guard, was a public official
in a "sensitive position" for purposes of § 2C1.1.

B.  *The Enhancement Applies to Crime-Facilitation Bribery*

Zamora offers a second theory for rejecting the enhance-
ment. Even if Lizak held a sensitive position, Zamora argues,
the enhancement applies only to bribes made for the purpose
of influencing an official act. See 18 U.S.C. § 201(b)(1)(A) (offi-
cial-acts bribery); see also *McDonnell v. United States*, 136 S. Ct.
2355, 2371–72 (2016) (defining "official act" as "a decision or
action on a 'question, matter, cause, suit, proceeding or con-
troversy'" that "must involve a formal exercise of governmen-
tal power that is similar in nature to a lawsuit before a court,
a determination before an agency, or a hearing before a com-
mittee"). According to Zamora, smuggling contraband cannot
be considered an official act because Lizak lacked legal au-
thority to supply inmates with drugs and other contraband,

from which Zamora argues that smuggling was not a "formal exercise of governmental power." See *McDonnell*, 136 S. Ct. at 2372. Zamora also emphasizes that he pleaded guilty to violating 18 U.S.C § 201(b)(1)(C), which, unlike § 201(b)(1)(A), has no requirement that the bribe was made to influence an official act. Section 201(b)(1)(C) applies instead to what Zamora calls crime-facilitation bribery—where the bribe induces the public official to do something that would be illegal even without the bribe.

Zamora did not make this distinct argument in the district court, so we review it only for "plain error." *United States v. Olano*, 507 U.S. 725, 732 (1993) ("Rule 52(b) defines a single category of forfeited-but-reversible error"—"'error' that is 'plain' and that 'affect[s] substantial rights'"), quoting Fed. R. Crim. P. 52(b). To be "plain," the error must be "clear" or "obvious." *Id*. at 734. If a guideline error is shown, however, it "most often will" affect the defendant's substantial rights and require resentencing. See *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016); see also *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018) ("[T]he failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings."). Still, a sentencing court may signal clearly that a particular guideline issue did not affect the ultimate sentence. E.g., *Molina-Martinez*, 136 S. Ct. at 1346–47; *United States v. Thomas*, 897 F.3d 807, 817 (7th Cir. 2018); *United States v. Hill*, 645 F.3d 900, 912–13 (7th Cir. 2011); *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009). Some guideline issues are abstract, technical, minor, and/or only tenuously related to the purposes of sentencing under 18 U.S.C. § 3553(a). That's why we have encouraged district judges to explain their thinking on whether disputed

guideline issues actually affect their sentences. E.g., *United States v. Marks*, 864 F.3d 575, 582 (7th Cir. 2017).

The forfeiture does not matter here, however, because Zamora's crime-facilitation argument is not persuasive. The distinction he draws between official-acts bribery and crime-facilitation bribery does not save him from the § 2C1.1(b)(3) enhancement because the enhancement applies to both forms. Section 2C1.1(b)(3) is worded broadly. It applies to all bribery offenses that "involved" a qualifying official; it does not limit its application to only certain forms of bribery.

Despite this broad language in (b)(3), Zamora contends, the Guideline's commentary requires a narrower interpretation. The Background Note to § 2C1.1 explains: "Under § 2C1.1(b)(3), *if the payment was for the purpose of influencing an official act* by certain officials, the offense level is increased by 4 levels." U.S.S.G. § 2C1.1 cmt. (backg'd) (emphasis added). Zamora interprets this statement as singling out official-acts bribery as the exclusive means of triggering the enhancement.

As with his previous argument, this would have been a stronger argument before 2004. The actual text of the Guideline then matched more closely the Background Note's language. At that time, the Guideline applied "If the offense involved *a payment for the purpose of influencing* an elected official or any official holding a high-level decision-making or sensitive position … ." U.S.S.G. App. C, Amendment 666 (Nov. 2004) (emphasis added). But the 2004 Amendments broadened the text of § 2C1.1(b)(3) to eliminate the need for "a payment for the purpose of influencing" an official. Instead, the enhancement now applies more broadly, "If the offense *involved* an elected public official or any public official in a high-level decision-making or sensitive position … ." *Id.* (emphasis

added). The Sentencing Commission explained that the amendment was intended to "ensure[] … that *all* offenses involving 'an elected public official or any public official in a high-level decision-making or sensitive position' will receive four additional offense levels." *Id.* (emphasis added). Section 2C1.1(c)(1) further confirms that this four-level enhancement applies not only to official-acts bribery but also to crime-facilitation bribery: "If the offense was committed *for the purpose of facilitating the commission of another criminal offense*, apply the offense guideline applicable to a conspiracy to commit that other offense, *if the resulting offense level is greater than that determined above*" in § 2C1.1(b)(3). (Emphasis added).

The vestigial language Zamora relies upon in the Background Note—seeming to limit the enhancement to offenses where "the payment was for the purpose of influencing an official act"—is thus no longer consistent with the broader, amended text of the Guideline itself. When such conflicts arise between the Guideline and the commentary, the Guideline controls. See *Stinson*, 508 U.S. at 43 ("It does not follow that commentary is binding in all instances. If, for example, commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline.").

Under the text of § 2C1.1(b)(3), Zamora's bribery offense indisputably "involved" Lizak. Lizak accepted bribes on several occasions and, in exchange for the $1,000 cash bribes, he personally delivered contraband within the prison walls. Because Zamora's bribery offense involved a public official in a sensitive position, the district court properly applied § 2C1.1(b)(3)'s four-level enhancement.

Finally, we take this occasion to remind district judges, and ourselves, that such close parsing of the evolving language of the Guidelines and their commentary can drift away from the purposes of sentencing that must, by law, drive the judge's discretionary sentencing decision under 18 U.S.C. § 3553(a). A sentencing judge who confronts a textual issue as involved as this one may of course find it appropriate to engage with it fully. But a judge is also entitled to respond to the debate by asking, "Why should I care?" See *Marks*, 864 F.3d at 576. If there is no good answer to that question in terms of the purposes set forth in § 3553(a), a decision that focuses primarily on those central purposes may serve better than one driven by the "attenuated subtleties" and nuances of the texts of the Guidelines and commentary. See *Lucas v. Earl*, 281 U.S. 111, 114 (1930).

The district court's judgment is AFFIRMED.